OPINION. Disney, Judge: Did the Commissioner err in adding $22,531.25 to partnership income for 1941 ? There is, in effect, no dispute as to the figures, the difference between the parties being, as to their significance and proper treatment. It is the petitioners’ view, in substance, that there was a mining partnership between Buffington & Smith and British-American; that, regardless of the form of the litigation, it was, in effect, for an accounting and that, since at the end of the litigation in 1941 the partnership was adjudged to owe British-American $4,601.21, it had no income in 1941. The respondent, as reflected in the deficiency notices, considers as income in the taxable year the damages, the loss of profits on 19 wells according to the court’s decision, plus the $1,750 stipulated as to the other well, No. 6, a total of $22,531.25; the theory being that though the net result of the action and cross-action between the litigants was a judgment for British-American in the amount of $4,601.21, nevertheless, the plaintiffs, on a cash basis, did recover and have applied to offset liability to British-American, $22,531.25, with the same effect as if they had been paid that much money and then applied it upon the adjudicated liability to British-American. Though many cases have been cited by the parties and examined by us, we think it not necessary to discuss them in detail here. It is well settled that the recovery of damages for the loss of profits results in income to one on the cash basis in the year of recovery. Though the petitioner urges that the matter was one of accounting between mining partners and points to the decision of the United States District Court that the relation was such, we not only note that that decision is not binding upon us, not being an adjudication of any state court or constituting res adjudicata, but also that the Circuit Court’s opinion does not appear to us to be upon that theory; furthermore, we consider that in fact the relationship was not that of mining partners. The contract between the partnership and Dorr contains no such provision. In sum, it merely provides for the transfer of an interest in a lease in consideration of drilling a producing well. A producing well was drilled and the interest transferred. This transfer alone would, of course, merely create tenancy in common. The only provision of the contract in anywise modifying tenancy in common is that which provides: “It is further agreed that in the handling of this as a joint venture, that there is to be no expense as overhead charged up on either side.” We think that clearly this language, merely referring to joint venture, is not sufficient to create a mining partnership. Moreover, even if there were mining partnership, in our view, the further provision causing the litigation and prayer for damages was so separate from any mining partnership as to eliminate such relationship from consideration here. The litigation grew up wholly because of a pleaded and proven violation by British-American of the contract provision that the partnership was “to have the preference of all future drilling operations, at the prevailing contract price.” The mining partnership as such, we think, could enter into such a contract with one of its members. We can not consider section 19.183-1 of Regulations 103, cited by the petitioner, as applicable here. That provision states, in effect, that payments to a partner for services rendered are not deductible in computing partnership net income, being held to represent a division of partnership profits. The petitioners’ view is that the damages recovered by the partnership in 1941 constituted mere payment to a partner for services rendered, and that the provision of the agreement for the preference in drilling to the partnership constituted an agreement with respect to distribution of partnership profits, so that such profits were merely the distributive share of Buffington & Smith for a period prior to July 31, 1939, therefore not includible in income in 1941. The regulation does not assist us on the present question. We have here a contract which might have been made with a stranger, by an alleged mining partnership, under which the stranger would have made profits. We do not think that for our present purpose the profits made by the partnership as a contractor constituted a mere agreement with respect to distribution of partnership profits, so as to cause a suit for damages for breach of contract and loss of profits to be properly regarded as one merely for an accounting, despite its language specifically praying for damages for such loss of profits. Moreover, the evidence before us, in our opinion, fails to show that there ever was a mining partnership, for nothing indicates that prior to the acquisition of the other seven-eighths by British-American the partnership had ever participated in the operation of the lease. The evidence is merely that the partnership drilled four more wells after the first test well. The action of British-American in its exclusive operation of the lease is clearly inconsistent with mining partnership. Not only must the contract between the parties provide for joint operation of the property, but also that it must be actually jointly operated. 40 C. J. 1145; 18 R. C. L. 1200. This is the law of Texas. Gardner v. Wesner, 55 S. W. (2d) 1104. Reading the decision of the Fifth Circuit in British-American Oil Producing Co. v. Buffington, 116 Fed. (2d) 363, convinces us that that court did not base its conclusions upon the fact of mining partnership, but upon a loss of profits of $1,093.75 per well for nineteen wells. We do not consider sound the distinction, from the present situation found by the petitioners, in the cases cited by respondent to support the idea of taxing damages recovered for profits lost (including North American Oil Consolidated v. Burnet, 286 U. S. 417; United States v. Safety Gar Heating & Lighting Co., 297 U. S. 88). That distinction is that no such case involves a cross-action as here. We see the point as altogether immaterial. The petitioner did recover judgment for damages instead of profits lost. Its opponent recovered a judgment for money (expenses) owed. The two judgments were offset, but that fact can not render less obvious the fact that the petitioner got full benefit, in payment of its debt, of the judgment in its favor, without which it would have had to pay money to its opponent on the cross-judgment. Unless, as petitioners argue and we do not believe, there was mining partnership and mere delay in ascertaining and distributing partnership income, the fact that damages recovered were applied in payment of debt on a cross-action can avail the petitioners nothing. They were on the cash basis. They got full monetary benefit, in 1941, of the damages then recovered by the partnership. There was clearly constructive receipt of income. Congress intended to tax proceeds of claims or choses in action for recovery of lost profits. United States v. Safety Car Heating & Lighting Co., supra; Hilda Kay, 45 B. T. A. 98. We conclude and hold that the Commissioner did not err in adding $22,531.25 to the partnership income in 1941 and in computing the petitioners’ deficiencies on that basis — the assignment of error in each case. Decision in all docket numbers will be entered for the respondent.