PETER TESTA AND JOSEPHINE TESTA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Testa v. Commissioner
Docket No. 6456-86
United States Tax Court
T.C. Memo 1989-556; 1989 Tax Ct. Memo LEXIS 554; 58 T.C.M. (CCH) 362; T.C.M. (RIA) 89556; October 11, 1989
Dante M. Scaccia, for the petitioners. Anne M. DiFonzo, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated December 13, 1985, respondent determined the following deficiencies in petitioners' Federal income tax and additions to tax: Addition to Tax
Year
Deficiency Sec. 6653(a) [1]
1979
$ 18,751.00
$   937.59
1980
63,020.18
3,151.01
The issues for decision are: (1) whether petitioners failed to report income for taxable year 1979 as determined by respondent through the examination of several currency exchanging transactions; (2) whether petitioners failed to report income for taxable year 1980 from undeclared used car sales; (3) whether petitioners are entitled to deductions claimed on their 1980 Federal income tax return under section 162(a) for *557 business expenses which they have failed to substantiate; (4) whether petitioners realized taxable income for taxable year 1980 due to the availability of funds in a Dealer Reserve Account maintained for their used car sales business; (5) whether petitioners failed to report income for taxable years 1979 and 1980 from two sales of real property; and (6) whether petitioners are liable for additions to tax under section 6653(a) due to negligence or intentional disregard of rules or regulations. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference.
Currency Exchanging Transactions
Petitioners, who resided in Jackson Heights, New York, when they filed their petition, filed joint Federal income tax returns for taxable years 1979 and 1980. Petitioner [2] immigrated from Italy with little formal education and has difficulty with the English language. During 1979, petitioner engaged in several currency exchanges at the Bank of Utica (sometimes hereinafter referred to as "the Bank"), located in Utica, New York, which were reported to respondent by the Bank through *558 currency exchange reports (Form 4789). The first transaction occurred on July 30, 1979, when petitioner exchanged $ 10,000 in small bills for large bills at the Bank. On July 31, 1979, petitioner exchanged another $ 10,000 in small bills for $ 1,400 in large bills and a bank check in the amount of $ 8,600 issued to Joseph Cimnella, petitioner's brother-in-law. On August 1, 1979, petitioner exchanged $ 13,000 in small bills for large bills at the Bank. On August 2, 1979, petitioner exchanged $ 20,000 in small bills for large bills at the Bank. Respondent determined that the funds exchanged by petitioner, totaling $ 53,000, represent unreported taxable income for 1979. Unreported Used Car Sales
From March 1, 1980 through December 31, 1980, petitioners owned an unincorporated used car sales business named T & T Auto. On their 1980 Federal income tax return petitioners reported gross receipts of $ 289,546 from T & T Auto. During the period at issue, T & T Auto maintained business accounts and loans *559 with the Bank of Utica. Petitioners had maintained personal accounts and loans with the Bank since 1960. Because of his familiarity with the Bank's personnel and its loan procedures, petitioner would often assist prospective car buyers in obtaining loans from the Bank. Petitioner would have the customer fill in and sign a loan application or installment sales contract and take the document to the Bank, which, if it approved the contract, would issue a discount check to T & T Auto for the amount financed. If the transaction was a personal loan to the purchaser the Bank would issue a treasurer's check payable jointly to the purchaser and T & T Auto. The discount and treasurer's checks issued by the Bank to T & T Auto from March 1, 1980 to December 31, 1980, totaled $ 294,935.03. Under New York law a dealer in used cars must maintain a Motor Vehicle Book of Registry of all vehicles purchased and sold. The dealer need not apply for a new Certificate of Title when he receives a vehicle, but may hold the old certificate until the vehicle is resold. At the time of resale, the dealer delivers the old title, together with the certificate of sale (Form MV-50) and the purchaser's application *560 for a new title, to the Department of Motor Vehicles. Petitioner maintained a Motor Vehicle Book of Registry as required of dealers under New York law. When petitioner purchased a used car his bookkeeper, Eleanor Aquaviva, would record in the Book of Registry the date of purchase, the name and address of the seller, the type of car, and the odometer reading. When a car was sold the bookkeeper would record the date of sale, the name and address of the buyer, the odometer reading, the vehicle inspection number, and the number of the Form MV-50 (which would be submitted to obtain the new title). The Book of Registry did not provide for the recording of either the purchase or selling price of the car. Because the purchaser of a car was issued a 30-day temporary tag, there was often a delay in recording the sale in the Book of Registry. The sale would be recorded when petitioner applied for the permanent tag. In addition to maintaining the Book of Registry, the bookkeeper, who worked three hours a day, prepared petitioners' 1980 Federal income tax return. Respondent determined that on their 1980 Federal income tax return petitioners understated their gross receipts from used car *561 sales by $ 75,032.18. The notice of deficiency states that in arriving at his determination, respondent compared the certificate of sale (Form MV-50) for each sale to: (1) discount and treasurer's checks issued to T & T Auto by the Bank from March 1, 1980 to December 31, 1980; and (2) petitioners' 1980 New York State sales tax return. The Form MV-50's for the sales at issue were not introduced in evidence. We find that in making his determination respondent compared the Book of Registry, not the Form MV-50's, to the checks and sales tax return. Through these comparisons, respondent concluded that the sale of 29 autos, resulting in gross receipts of $ 75,032.18, were omitted from the Book of Registry: Comparison of Treasurers Checks to Book of Registry
Buyer's Name
Date of Check
Amount Charlene House
3/04/80
$ 2,603.00
Jamie Moore
3/20/80
2,303.00
Richard Santillo
4/10/80
5,403.00
David Zscek
5/15/80
4,003.00
Annette Conte
6/19/80
2,503.00
Frank V. Rizzuti
6/24/80
5,503.00
Sam Boyd
6/25/80
3,495.00
Ronald C. Titus
7/10/80
1,898.00
Michael J. LeClaine
7/10/80
2,903.00
Margaret Schmidt
7/11/80
1,737.79
Donald Lenio
7/14/80
2,203.00
Mary Barnes
7/14/80
4,203.00
Shirley U. Hendricks
7/18/80
2,003.00
Ronald Brown
7/23/80
2,303.00
David E. Moody
7/25/80
3,003.00
Ivory R. Adams
7/30/80
2,603.00
Samuel Heywood
8/01/80
1,103.00
Samuel Heywood
8/11/80
481.00
Total
$ 50,253.79
*562 Comparison of Discounted Checks to Book of Registry
Buyers Name
Date of Check
Amount
Victor Sanchez
4/17/80
$  1,788.39
Madonia
5/09/80
4,503.00
Hill
5/09/80
1,675.00
Davis
8/13/80
2,503.00
Parrish
8/15/80
1,703.00
Jan Newton
8/28/80
2,203.00
Iara Montanez
9/03/80
2,403.00
Total
$ 16,778.39
Comparison of Sales Tax Return to Book of Registry
Date
Amount of Sale
12/02/80
$ 2,600.00
12/12/80
1,400.00
12/22/80
1,600.00
12/26/80
2,400.00
Total
$ 8,000.00
TOTAL
$ 75,032.18
Because the sales were not recorded in the Book of Registry, respondent concluded that they were omitted from petitioners' 1980 Federal income tax return. However, the following sales which respondent claims were omitted from the Book of Registry were in fact recorded: Date of Sale as Recorded
Purchaser
Date of Check
in Book of Registry
Victor Sanchez
4/17/80
4/17/80
David Zscek [3]
5/15/80
5/15/80
Margaret Schmidt
7/11/80
7/12/80
Ivory Adams
8/01/80
8/02/80
Reginald Parrish
8/15/80
8/18/80
Jan Newton
8/28/80
9/12/80
*563 Date of Sale Per
Date of Sale as Recorded
Purchaser
Sales Tax Return in Book of Registry
Benjamen Felton
12/02/80
12/02/80
(illegible)
12/12/80
12/12/80
Thomas Roberts
12/22/80
12/22/80
Kathy Sahli
12/26/80
01/03/81
Dealer Reserve Account
The Bank of Utica maintains a Dealer Reserve Account for each used car dealer for which it provides loans. The Dealer Reserve Account is maintained by the Bank to cover losses on loans written to a dealer's customers. Between March 1, 1980 and December 31, 1980, deposits totaling $ 2,583.07 were made to the T & T Auto's Dealer Reserve Account. Checks issued to T & T Auto by the Bank during this period note the amount of the proceeds being deposited to the Dealer Reserve Account, and in many cases note the term of the loan. The shortest term noted on any of the checks is 30 months. A portion of the funds held in the Dealer Reserve Account became available for withdrawal by petitioners when a loan was paid in full by the purchaser. However, if any loan made on a car sold by petitioners was 60 days past due, the entire Dealer Reserve Account was unavailable to the extent of the amount past due. Several *564 of the loans made during the period at issue were never collected. The Dealer Reserve Account bore no interest. Disallowed Deductions
Petitioners claimed $ 288,935.12 of business expenses as deductions under section 162(a) in their 1980 Federal income tax return. Respondent disallowed $ 48,312.98 of the claimed deductions because petitioners could not substantiate the business expenses. In 1981, a fire destroyed virtually all of petitioners' business records for the period at issue. Sales of Real Property
While living in Utica, New York, petitioners owned two parcels of real property located at 610-612 Albany Street and 506 Mohawk Street in Utica. The Albany Street property was purchased by petitioners on December 12, 1967, for $ 13,500. After increasing their basis for $ 940 of substantiated improvements made by petitioners, respondent determined that their basis in the Albany Street property was $ 14,450, less depreciation allowed of $ 11,270.18, for an adjusted basis of $ 3,179.82. The Albany Street property was sold in 1979 for $ 14,500. Petitioners failed to report any gain from the sale of the Albany Street property on their 1979 income tax return. *565 Respondent determined that petitioners realized a gain of $ 11,320.18 on the sale. The Mohawk Street property was purchased by petitioners on August 15, 1977, for $ 12,500. Respondent determined that their basis in the Mohawk Street property was $ 13,000, less depreciation allowed of $ 1,213.32, for an adjusted basis of $ 11,786.68. The Mohawk Street property was sold in 1980 for $ 24,000. Petitioners failed to report any gain on the sale of the Mohawk Street property on their 1980 income tax return. Respondent determined that petitioners realized a gain of $ 12,213.32 on the sale. OPINION Currency Exchange Transactions
The first issue for decision is whether petitioners have unreported income for 1979 as determined by respondent through the examination of currency transaction reports. Gross income is defined in section 61(a) as including all income from whatever source derived. Taxpayers must maintain books and records sufficient to determine their gross income. Sec. 1.6001, Income Tax Regs. Where taxpayers do not maintain adequate records, respondent is entitled to use any reasonable means of reconstructing income. Llorente v. Commissioner, 74 T.C. 260, 266 (1980), *566 affd. in part and revd. in part 649 F.2d 152 (2d Cir. 1981). Respondent's determination is presumed to be correct. The burden is on petitioners to introduce evidence to rebut the presumption of correctness. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Respondent need not prove a likely source of the reconstructed income. Tokarski v. Commissioner, 87 T.C. 74 (1986). The burden is on petitioners to prove that the funds reflected in the bank records are not includable in their income. Zarnow v. Commissioner, 48 T.C. 213 (1967). Petitioners argue that the money which they exchanged was only temporarily within their possession and therefore is not income. At trial, petitioner testified that, aside from the $ 8,600 which he exchanged for a bank check, the money he exchanged did not belong to him. Petitioner claimed that a stranger he met at a gas station paid him $ 500 to exchange the funds. Petitioner could not identify the stranger, made no effort to locate him, and presented no witnesses or documentary evidence to corroborate his testimony. Petitioners have not satisfied their burden of proof. Petitioner's *567 claim that a complete stranger paid him $ 500 to exchange the currency is unconvincing. We find it improbable that petitioner would engage in such a series of transactions without making any inquiries regarding the stranger or discussing the transactions with a third party who could corroborate his story. We are not required to accept petitioner's self-serving testimony. Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. Because petitioners have introduced no evidence to corroborate petitioner's testimony, we uphold respondent's determination in regard to the currency exchange transactions. Unreported Sales of Used Cars
Respondent determined that petitioners failed to report the proceeds from the sale of 29 used cars on their 1980 Federal income tax return. Petitioners attack respondent's determination on the grounds that: (1) the determination is arbitrary, and therefore not entitled to the usual presumption of correctness; or (2) if the determination is entitled to the presumption of correctness, petitioners have satisfied their burden of proving it incorrect. We will first address petitioners' claim that *568 the notice of deficiency is arbitrary, and therefore not entitled to the presumption of correctness. Respondent's determinations are generally presumed to be correct. Welch v. Helvering, 290 U.S. 111 (1933). The burden of proving that they did not have unreported gross income is on petitioners. Rule 142(a). However, a showing by petitioners that the statutory notice is arbitrarily excessive or without foundation places the burden of going forward with the evidence on respondent. Helvering v. Taylor, 293 U.S. 507 (1935). When petitioner asks the Court to find the statutory notice arbitrary, he is asking the Court to look behind the statutory notice. As a general rule, the Court will not look behind a notice of deficiency to examine the evidence used or the propriety of respondent's motives or administrative policy or procedure in making the determination. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974); Jackson v. Commissioner, 73 T.C. 394 (1979). This Court has, however, recognized an exception to the general rule in cases involving unreported illegal income where the Commissioner introduced *569 no direct evidence but instead rested on the presumption of correctness and the taxpayer challenged the deficiency on the ground that it was arbitrary. Under such limited circumstances, we will inquire into the factual foundations underlying a deficiency notice. Llorente v. Commissioner, supra at 264; Jackson v. Commissioner, supra at 401. In any event, respondent has not rested on the presumption of correctness. With the exception of petitioners' 1980 New York State sales tax return, respondent introduced into evidence, through stipulations before and during trial, all of the documents on which he based his determination. In addition, though their business records were destroyed in a 1981 fire, petitioners have not shown a lack of available evidence to discredit respondent's determination. Therefore, we find that the notice of deficiency was not arbitrarily issued. Accordingly, respondent's determination is presumptively correct, and petitioners bear the burden of proving that respondent's determination is incorrect. Respondent's method of determining that petitioners omitted the gross receipts from the sale of 29 used cars from their *570 1980 Federal income tax return is unclear on the face of the notice of deficiency. As explained in his post trial brief, respondent relied on the following series of conclusions in making his determination. Each business day petitioners' bookkeeper would record the purchases and sales of used cars for that day in the Motor Vehicle Book of Registry. Petitioners' bookkeeper failed to record 29 sales, representing gross receipts of $ 75,032.18, in the Book of Registry during 1980. At the end of the year the bookkeeper prepared petitioners' 1980 Federal income tax return based on the entries in the Book of Registry. Therefore, if the sale of a used car was not noted in the Book of Registry, the bookkeeper did not include it in the gross receipts on the return. With respect to 4 of the 29 sales, respondent in his post-trial brief argues an additional theory in support of this determination. The gross receipts on petitioners' New York State sales tax return, respondent claims, exceed the gross receipts on petitioners' Federal income tax return by $ 8,000. The $ 8,000 difference, respondent argues, represents sales of used cars during December 1980, which petitioners did not report *571 on their 1980 Federal income tax return. Respondent did not introduce petitioners' New York State sales tax return for 1980 into evidence. Respondent's argument with respect to these 4 sales, all of which occurred in December of 1980, is inconsistent with his theory with respect to the other 25. In concluding that the first 25 sales were omitted from petitioners' Federal income tax return, respondent reasoned that the bookkeeper based the petitioners' tax return on the entries in the Book of Registry. Therefore, if a sale was omitted from the Book of Registry, it was also omitted from the return. With regard to 4 of the sales, however, respondent argues that even if the sales were properly recorded in the Book of Registry, they were nevertheless omitted from the tax return. Because of this inconsistency, we will disregard respondent's second theory regarding the 4 December sales. We hold that petitioners have met their burden of proving that respondent's determination is incorrect. Respondent's determination is based on 29 used car sales which he concluded were omitted from the Book of Registry. However, at least 10 of these sales are clearly recorded in the Registry. Because *572 the Book of Registry is maintained for the purpose of tracing vehicle titles, rather than as a bookkeeping record, the information in the Registry does not match exactly the information on the treasurer's checks, discount checks, and New York State sales tax return. The purchaser of a used car does not always take title to the vehicle, and there may be a delay in applying for a permanent Certificate of Title while the temporary tag is in effect. Respondent insists on an exact matching of names and dates between the checks, the sales tax return, and the Book of Registry. However, we are satisfied that petitioners' Book of Registry reflects purchases and sales of used cars during the period at issue with reasonable accuracy. We also note that the total amount received from the Bank ($ 294,935.03) by petitioners during the period at issue exceeds their gross receipts as stated in their tax return ($ 289,546) by only $ 5,389.03. However, respondent determined that petitioners' actual gross receipts exceeded their gross receipts as reported by $ 77,615.25. If respondent's determination is correct, petitioners must have sold a substantial number of used cars for cash or through an *573 institution other than the Bank. Respondent did not allege or introduce any evidence showing that there were any such sales. Because petitioners have proven that respondent's determination is incorrect, and because respondent has failed to offer any evidence to rebut petitioners' showing, we hold that petitioners did not have unreported income from the sale of used cars in 1980. Respondent raises an issue regarding petitioners' 1980 Federal income tax return which he failed to raise in the notice of deficiency or at trial. Petitioners claimed $ 9,385 in commissions paid to an employee salesperson as a business expense on their return. Respondent argues that the commissions were actually paid to petitioner, and are therefore includable as income in their 1980 return. Because petitioners had neither notice of nor an adequate opportunity to respond to respondent's argument, we will not consider the issue. Church of Scientology of California v. Commissioner, 83 T.C. 381 (1984), affd. 823 F.2d 1310 (9th Cir. 1987). Dealer Reserve Account
It is well established that income which is subject to a taxpayer's unfettered control is taxable to *574 him as his income whether he sees fit to enjoy it or not. Corliss v. Bowers, 281 U.S. 376 (1930); Wilson v. Commissioner, 40 T.C. 543 (1963); Smith v. Commissioner , 8 T.C. 1319 (1947). Under the cash method of tax accounting all items which constitute gross income are to be included in the taxpayer's income for the taxable year in which the funds are actually or constructively received. Section 1.446-1(c)(1)(i), Income Tax Regs.; Newmark v. Commissioner, 311 F.2d 913 (2d Cir. 1962). Income is constructively received by a taxpayer in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time. Sec. 1.451-2, Income Tax Regs. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. Sec. 1.451-2(a), Income Tax Regs.
Respondent argues that funds maintained in a Dealer Reserve Account at the Bank were income to petitioners in 1980 because they were available for withdrawal *575 at any time. Petitioners argue that there were substantial limitations on their ability to withdraw these funds, and that therefore the funds are not taxable to them for the year in question. Petitioners have satisfied their burden of proving that the deposits to the Dealer Reserve Account were subject to substantial limitations during 1980. Because the term of the loans issued during the period in question was at least 30 months, none of the loans would be paid off by the end of the year. Therefore, none of the funds in the Dealer Reserve Account would be available to petitioners. In addition, a bank representative testified that several of the loans arising from sales during the year at issue are in default and remain uncollected. Under these circumstances, the Bank representative testified, the Bank would retain the entire amount of the Dealer Reserve Account up to the unpaid loan balances as a reserve. We find that none of the deposits made to the Dealer Reserve Account during March 1, 1980 to December 31, 1980, were income to petitioners in taxable year 1980. Substantiation of Business Expenses
Section 162(a) provides that there shall be allowed as a deduction *576 all of the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Petitioners are required to maintain records sufficient to establish the amount of the deductions to which they are entitled. Sec. 1.6001-1(a), Income Tax Regs. Deductions from income are allowable as a matter of legislative grace, and petitioners bear the burden of proving they are entitled to them. Welch v. Helvering, 290 U.S. 111 (1933); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Petitioners' business records were destroyed in a January 1981, fire at T & T Auto. However, the destruction of the records does not relieve petitioners of their burden of proof. Holderness v. Commissioner, 615 F.2d 401 (6th Cir. 1980), affg. a Memorandum Opinion of this Court. Where records have been destroyed, deductions may be proven by methods such as the introduction of bank records or the testimony of a bookkeeper. American Police & Fire Foundation, Inc. v. Commissioner, 81 T.C. 699 (1983). Petitioners' only evidence with regard to the disallowed deductions was *577 petitioner's testimony categorically affirming that the information on petitioners' 1980 Federal income tax return is correct. Petitioner's testimony was vague and unpersuasive. The mere fact that they are listed on a return is insufficient evidence to substantiate claimed deductions. Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979). Where the only evidence of payments claimed as business deductions is the taxpayer's unsupported testimony, we need not blindly accept such testimony. Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. Petitioners made no attempt to introduce the testimony of their bookkeeper, the records of their suppliers, or any bank statements showing that they are entitled to the claimed deductions. The failure of a taxpayer to call such witnesses in an effort to sustain his burden of proof or to produce available documentary evidence gives rise to an inference that the evidence would have been unfavorable to him. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1946). We find that petitioners have *578 failed to satisfy their burden of proving that they are entitled to the claimed deductions, and therefore uphold respondent's disallowance of a deduction for the unsubstantiated business expenses. Unreported Income From Sales of Real Property
Under section 1001(a) the gain from the sale of property is the excess of the amount realized over the adjusted basis. Under section 1011(a) the adjusted basis of property is the cost basis adjusted as provided in section 1016(a). Section 1016(a)(1) provides that proper adjustment shall be made to basis for expenditures properly chargeable to capital account. Section 1016(a)(2) provides that the adjusted basis of property shall be decreased by the amounts allowed or allowable as deductions for depreciation under section 167. Though a taxpayer's method of computing depreciation is erroneous, nevertheless, to the extent that the deduction is allowed or allowable, the basis must be reduced by the amount allowed or the amount allowable, whichever is greater. Reithmeyer v. Commissioner, 26 T.C. 804, 815 (1956). Petitioners contend they realized no gain from the sale of the two parcels of real property in question. They *579 argue that, in computing the adjusted basis of the two parcels, respondent: (1) erred in failing to increase the adjusted basis for unsubstantiated improvements made by petitioners; (2) erred in decreasing the adjusted basis by excessive deductions for depreciation which petitioners claimed and respondent allowed for 1979 and the preceding years. Petitioners claim that, because of expenditures for improvements to the two parcels, their adjusted basis equaled or exceeded the amount realized from the sale, and therefore they realized no gain. Petitioners are required to maintain records sufficient to establish their expenditures chargeable to capital account. Sec. 1.6001-1(a), Income Tax Regs. Other than petitioner's vague and indefinite testimony regarding improvements made to the two parcels, petitioners presented no evidence whatsoever regarding the alleged improvements. We therefore uphold respondent's determination with respect to adjustments to basis for improvements. Geiger v. Commissioner, supra.
In determining the unreported income from the sale of the two parcels, respondent decreased the adjusted basis by the amounts *580 respondent had previously allowed for depreciation. Because petitioners overstated their basis in the two parcels in computing depreciation, the amounts allowed as deductions were greater than the amounts allowable. Petitioners argue that the adjusted basis of the two parcels should be increased only by the amount allowable, not the amount actually allowed. We reject petitioners' argument as having no foundation in the law. We find that respondent correctly determined petitioners' gain on the sale of the two parcels of real property, and therefore uphold his determination as to this issue. Additions to Tax Under Section 6653(a)
We now address the final issue of whether petitioners are subject to additions to tax under section 6653(a). Section 6653(a) provides for an addition to tax of 5 percent of any underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Negligence under section 6653(a) is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proof *581 with respect to additions to tax for negligence. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860 (1982). With respect to petitioners' underpayment of tax for 1979, attributable to unreported currency exchange transactions and unreported gain from the sale of the Albany property, we find that petitioners' failure to report the undeclared income which was revealed in the currency exchanges and failure to maintain any records regarding the transactions was due to the intentional disregard of regulations. In addition, petitioners' failure to report any gain on the sale of the Albany property is attributable to negligence because petitioners failed to exercise due care in computing their basis in the property. We therefore uphold respondent's determination regarding the addition to tax for 1979. Petitioners' underpayment of tax for 1980 is attributable to their inability to substantiate business expenses and their failure to report the gain from the sale of the Mohawk property. With regard to the part of the underpayment attributable to the sale of the Mohawk property, petitioners' failure to report any gain on the sale is attributable to negligence. Petitioners *582 failed to exercise due care in computing their basis in the property. Because some part of the underpayment was attributable to negligence, as required by section 6653(a), we uphold respondent's determination regarding the addition to tax for 1980. In light of the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Unless otherwise indicated, all references hereafter to petitioner shall be to Peter Testa and all references to petitioners shall be to both Peter and Josephine Testa.↩
3. David Zscek purchased a 1979 Pontiac on May 15, 1980, which was recorded in the Book of Registry as being purchased by Wheel and Waves.↩