AMERICAN POLICE & FIRE FOUNDATION, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 13515–78, 22947–80.     Filed October 5, 1983.

*Gregory C. Picken, Ronald M. Barron,* and *Bruce Jay Toland,* for the petitioner.

*Mark W. Nickerson,* for the respondent.

SHIELDS, *Judge*: These consolidated cases are presently before the Court on six motions by the petitioner. The motions are as follows: (1) Motion That Respondent Be Held In Default; (2) Motion For Summary Judgment; (3) Motion to Shift Burden Of Proof, Or In The Alternative, Shift Burden Of Going Forward, which we shall treat as a motion to shift the burden of going forward with the evidence to respondent; (4) Motion To Return Property Or Compel Stipulation Of Determination Of No Deficiency; (5) Motion To Strike Respondent's Answer; and (6) Motion To Quash Statutory Notice of Deficiency.

All of the motions are based upon the alleged loss of a portion of petitioner's records by the respondent. Respondent objected to the motions and an evidentiary hearing was held. The record at this point consists of the pleadings plus the testimony and exhibits received at the hearing.

## FINDINGS OF FACT

The only issue to be decided is what effect, if any, does the alleged loss of the records have upon the procedural rights of the parties.

Petitioner, American Police & Fire Foundation, Inc., is a dissolved nonprofit corporation[1] which had its legal residence for purposes of this proceeding in Miami, Fla., at the time the petitions were filed. The petitions seek a redetermination of income tax deficiencies and additions to tax asserted against the petitioner by the respondent as follows:

| Taxable year | Deficiency in tax | Additions to tax under sec. 6551(a)[2] |
|---|---|---|
| 1972 | $6,847.84 | 0 |
| 1973 | 21,968.00 | $5,492 |

---

[1] In *American Police & Fire Foundation, Inc. v. Commissioner,* T.C. Memo. 1981–704, we found that the petitioner, although dissolved, was entitled to file the petitions herein under 18 Fla. Stat. Ann. sec. 607.297.

[2] All section references are to the Internal Revenue Code of 1954 as amended during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

| 1974 | $10,536.00 | $2,634 |
| 1975 | 9,144.00 | 2,286 |
| 1976 | 18,532.00 | 4,633 |

All of the above deficiencies arose from the revocation by the respondent of the petitioner's exempt status under section 501(c)(3).

On April 7, 1982, the parties were notified by the Court that these cases had been placed on a trial calendar to commence in Miami, Fla., on July 26, 1982. Prior to that date, the respondent had been represented by Mark W. Nickerson, trial attorney. His office is in the Federal Office Building, Atlanta, Ga., but his mailing address is Post Office Box 901, Atlanta, Ga. 30370. Prior to April 7, 1982, the petitioner had been represented by Gregory C. Picken of Barron, Lehman & Cardenas, P.A., 888 Brickell Avenue, Suite 200, Miami, Fla. 33131.

After receipt of the trial notice and in preparation of the case for trial, Mr. Nickerson served upon Mr. Picken a request for the production of certain documents. In the request, the documents were to be produced for inspection and copying at Mr. Nickerson's office in the Federal Office Building in Atlanta.

Upon receipt of the request, Mr. Picken suggested to the petitioner through its principal officer, Mr. Arenberg, that the various documents covered thereby be assembled and delivered to Mr. Picken's office in Miami for use in complying with the request. In the meantime, there was apparently some disagreement, or at least discussion, between Mr. Picken and Mr. Nickerson as to where the records were to be produced by the petitioner in order to comply with Mr. Nickerson's request. In any event, Mr. Nickerson later agreed that the production of the records in Atlanta would not be necessary, provided the records were "made available to the revenue agent, Dorothy Robinson, in Miami."

Ms. Robinson had conducted the respondent's investigation and was assisting Mr. Nickerson in his preparation for trial. She met with Mr. Picken in his office in Miami on June 7, 1982. During this meeting, Mr. Picken delivered to Ms. Robinson, in accordance with Mr. Nickerson's request, various records. During the meeting, Ms. Robinson offered to inventory the records and to provide Mr. Picken with a copy of the

inventory. Mr. Picken replied that he did not think that an inventory was necessary even though he did not have copies of many of the documents which he was delivering to Ms. Robinson. It was understood between Ms. Robinson and Mr. Picken that the records would be examined and copied by her in Miami. Upon returning to her office, she discovered, however, that the records were "too voluminous" to copy locally. She so advised her superior and he, in turn, conferred by telephone with Mr. Nickerson in Atlanta. Ms. Robinson was then advised by her superior that Mr. Nickerson had directed that all of the records be sent to him in Atlanta by registered mail.

When obtained by Ms. Robinson from Mr. Picken, most of the records were contained in a medium-sized cardboard packing box. The box, however, was filled to overflowing, and a number of ledgers and journals and certain other documents were produced with the box, but not in it.

On June 8 and 9, 1982, Ms. Robinson inventoried the documents obtained by her from Mr. Picken. They included petitioner's bylaws and minutes of some corporation meetings; a membership list; 121 copies of the "Police Times"; bank statements and canceled checks for 1970 through 1977, except December 1976; duplicate deposit tickets for 1974 through 1976; computer transaction listings for 1971 through 1974; cash receipts and disbursements journals for 1967 through 1977; general ledgers for 1969 through 1971, and 1973 through 1977; adjusting journal entries for 1975 and 1976; correspondence about petitioner's efforts to establish a museum; a debit memorandum for the American Police Academy; and applications for and copies of letters transmitting awards.

On June 9, 1982, Agent Robinson received the instructions from her group manager to send the records to respondent's counsel in Atlanta by registered mail. Unable to find in her building a box large enough to hold the documents, Robinson obtained a number two canvas mailbag from her mailroom. After being told on the telephone by an employee of the local post office that a mailbag could not be sent by registered mail, Robinson prepared the bag for mailing by certified mail with return receipt requested.

Various bundles of documents were placed by Agent Robinson in the cardboard box in which they arrived. She then

placed the box in the mailbag. The hard cover ledgers and journals and other documents which could not be inserted in the box were placed alongside the box in the mailbag. The drawstring to the mailbag was then closed and clamped by Robinson with a locking device and a security clip which held in place a cardboard address card. On the card, Agent Robinson typed the following: "W. Preston White, Jr., Post Office Box 901, Atlanta, Georgia 30370, Attn: Mark Nickerson." She had previously addressed correspondence to respondent's counsel in that manner, which he had received. She taped the usual green return receipt for certified mail to the outside of the bag.

Robinson then gave the bag, which was nearly full and so heavy that she could not carry it, to another revenue agent who delivered it to the post office on June 10, 1982, where it was mailed by certified mail, return receipt requested.

About a week later, Robinson received the return receipt, unsigned and undated. On June 22, 1982, following an inquiry by respondent's counsel as to the whereabouts of the records, Robinson called the post office and requested that the mailbag be traced. The post office was unable to trace the mailbag successfully because it was sent by certified, instead of registered, mail.

On June 30, 1982, a number two mailbag addressed to the International Police Hall of Fame, 1100 N.E. 125th Street, North Miami, Fla. 33161, was received in the North Miami Post Office from the Dead Letter Parcel Unit in Atlanta, Ga. The dead letter office in Atlanta receives any mail which cannot be delivered in the southern region. If an address card becomes detached from a sealed mailbag, the bag is sent to the dead letter office. There, the seal is broken and the bag searched for an addressee.

When the regular carrier in Miami for petitioner's postal route received the mailbag, he opened it to ascertain whether it contained mail addressed to more than one addressee. He found only loose documents pertaining to the American Federation of Police. Since the bag was too heavy to handle by the usual carrier on his bicycle, it was delivered by truck to petitioner's office by another post office employee.

The same morning the bag was delivered, petitioner's employee, Mr. Van Brode, took all the records out of the bag

and put them on the mail sorting desk alongside the regular mail for that day. Later in the day when Mr. Arenberg, petitioner's principal officer, saw the records, he instructed Van Brode to repack the bag and place it in an unlocked storage room which was accessible to the various office employees of the petitioner. A few days later, after an inventory had been made of the bag by an employee of petitioner, the bag and records were delivered to Mr. Picken at his office. This inventory is not in the record.

On July 6, 1982, Agent Robinson went to Mr. Picken's office and inventoried the records. Her inventory of this date includes only bank statements and canceled checks for 1970, 1971, and 1972; general ledgers for 1970, 1971, and 1973; cash receipts and disbursements journals for 1967 through 1974; assorted loose papers labeled "Efforts to Buy Building"; loose corporate minutes secured with a rubber band; and nine copies of the "Police Times." She also found a general ledger for 1972 which was not originally included with petitioner's documents. Petitioner's counsel refused to deliver the remaining records to Agent Robinson at this meeting.

There is a conflict in the record as to the condition of the mailbag upon its return to petitioner. According to the postal employees, the mailbag that was returned to petitioner was nearly three-quarters full, but when the remaining records were placed in the bag at the hearing, the bag was less than one-half full.

Aside from Agent Robinson's attempt to trace the mailbag, neither party has made an effort to locate the missing records. Petitioner has not tried to reconstruct the relevant information contained in the missing records and the issues of "Police Times" from secondary sources.

## OPINION

Petitioner contends that the respondent should be accountable for the missing documents because they were entrusted to him for inspection and copying in Miami and, without petitioner's approval, they were mailed to Atlanta and were lost in the process. Petitioner concedes that it could present its case fairly and fully if the missing records could be reconstructed but, according to petitioner, they can only be inadequately reconstructed at best.

Respondent contends that his actions do not warrant dismissal, striking the answer, or shifting the burden of going forward with the evidence because there has been no showing that the lost records were material to petitioner's case or cannot be reconstructed from secondary evidence.

We agree with respondent but, at the same time, we are unable to find either side blameless in this case. Obviously, if the records had been kept in Miami they would not have been lost. Furthermore, if Agent Robinson had mailed the documents by registered mail as she was instructed to do, it would have been possible to trace the mailbag every step along its route to Atlanta. But acting on the erroneous advice of a postal service employee, she sent the bag by certified mail instead, which could not be traced. In addition, if Agent Robinson had carefully packaged and separately addressed the different bundles of petitioner's documents, there may have been a higher percentage of recovered papers.

On the other hand, we are not entirely satisfied that the documents represented to the Court as being those returned from the Dead Letter Office are identical to or the same in number as the documents returned to petitioner by the post office. Two post office employees testified that the mailbag containing petitioner's documents as displayed to them in Court was considerably less full than the bag delivered to petitioner's office. Also, Ms. Robinson's inventory of the returned documents turned up one item that was not included in the first inventory—the general ledger for 1972. There was no explanation for this discrepancy, though Agent Robinson testified she searched the documents initially received for the 1972 ledger because she had found and noted ledgers for years both preceding and following 1972. In addition, petitioner failed to call the employee of petitioner who inventoried the contents of the mailbag after it was returned to the petitioner. In the absence of some logical excuse, this failure leads to the inference that if such employee had been called, the testimony would have been unfavorable to the petitioner. *Wichita Terminal Elevator Co. v. Commissioner*, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

Neither party has suggested, nor has our research uncovered, any statute governing the mailing of taxpayer records. Similarly, we have found no Internal Revenue directive

requiring that taxpayer's documents like those herein be mailed by certified or registered mail or in any other particular manner. Respondent's internal instructions and procedures for mailing tax materials are set forth in the Administrative Mail Handbook. IRM 1(15)89. Sections 231 and 232 of that handbook provide that registered and certified mail must be used when required by statute, as in section 6212 respecting the mailing of statutory notices of deficiency, or by some internal management document.

Sections 640 and 660 of the handbook describe mailing guidelines for employees of District Directors. It provides that materials too large to fit in an envelope should be accompanied by a properly addressed label. The label should show the internal code symbols of the sending office to identify that office in the event the bag or other package used is returned from the post office. The guidelines also recommend the use of post office box addresses to expedite the sorting and delivery of incoming mail to the appropriate office.

Agent Robinson generally complied with these guidelines. She placed the materials in a mailbag which was properly labeled with a return address. Although she might also have placed address labels on the individual packets in the bag, we are unable to find that her failure to do so constitutes lack of due care. In addition, as recommended in the handbook, she used the post office box address for respondent's counsel. Petitioner urges that Agent Robinson's failure to use the Internal Revenue Service in the address amounts to lack of due care, but we believe the forwarding address as used to be appropriate under the circumstances. Further, even if Agent Robinson had failed to follow the internal guidelines of her office, we are aware of no case holding that such failure constitutes negligence as a matter of law. The loss of records herein was thus unintentional.

With a few exceptions not applicable here, the petitioner in proceedings in the Tax Court bears the burden of proving that respondent's determination is incorrect. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a). Petitioner's burden of going forward with the evidence does not shift merely because his records are unintentionally lost, whether by petitioner, the Government, or the post office. Instead, the type of evidence that may be offered to establish a fact is altered. *Malinowski v.*

*Commissioner*, 71 T.C. 1120, 1125 (1979). That is, secondary evidence may be submitted when an original document is unavailable to prove its contents. Rule 1004, Fed. R. Evid.[3] On the record before us, we are unable to find that the Internal Revenue Service even negligently lost the records petitioner turned over to it. In fact, it is not clear who lost all the records which are now unavailable, whether the respondent, the postal authorities, or the petitioner.

Even if we were able to find that the respondent negligently lost petitioner's records and that the missing magazines and financial records were material to its case, petitioner still has not established that the lost records could not be reconstructed or other copies of the "Police Times" obtained from a university or other library.[4]

The cases cited by petitioner in support of its motions are distinguishable. *Suarez v. Commissioner*, 58 T.C. 792 (1972), concerned respondent's use of records in determining a deficiency in a civil tax proceeding. The records had been illegally seized during a criminal investigation. Under these circumstances, we ruled that the notice of deficiency had lost its presumptive correctness and consequently the burden of going forward with the evidence was shifted to respondent.[5]

In *Rosen v. United States*, an unreported case (D. Minn. 1926, 15 AFTR 501), the taxpayer's books of account were lost

---

[3]Rule 1004. Admissibility of Other Evidence of Contents.

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—

(1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or

*       *       *       *       *       *       *

(3) Original in possession of opponent. At a time when an original was under the control of the party against whom offered, he was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and he does not produce the original at the hearing; *  *  *

See also 4 J. Wigmore, Evidence, ch. 41 (J. Chadbourn rev. 1972); 2 B. Jones, Evidence, secs. 7:12–7:30 (6th ed. 1972).

The Federal Rules of Evidence are applicable in Tax Court proceedings. Sec. 7453; rules 101, 1101, Fed. R. Evid.; Rule 143, Tax Court Rules of Practice and Procedure.

[4]We note that the John Jay College of Criminal Justice of New York and the University of Georgia both list the "Police Times" in their collections.

[5]We note that in *Guzzetta v. Commissioner*, 78 T.C. 173 (1982), we held that we would no longer follow *Suarez v. Commissioner*, 58 T.C. 792 (1972), to the extent that it is inconsistent with *United States v. Janis*, 428 U.S. 433 (1976).

while in the hands of the taxpayer. The District Court stated that, in such circumstances where the books of account within a short time after they have been in use were destroyed or missing, a presumption arises that the evidence, if produced, would be unfavorable to the taxpayer.

Here, the records were not illegally seized during a criminal investigation and we are unable to find who possessed any particular record at the time it became missing.

We have found no case that stands for shifting the burden of going forward with the evidence on these facts. Accordingly, we hold that petitioner retains the burden of going forward with the evidence and the ultimate burden of proving that it was organized and operated for exempt purposes during the years in issue.

Finally, we agree with respondent that this is not an appropriate case for summary judgment or for holding respondent in default. Again, there is no evidence that losing the records was intentional or that the lost records cannot be reconstructed. Cf. *United States v. Heath,* 147 F.Supp. 877 (D. Hawaii 1957), appeal dismissed 260 F.2d 623 (9th Cir. 1958) (indictment dismissed when Government lost taxpayer's records which were crucial to the defense in a criminal tax fraud case); *United States v. Consolidated Laundries Corp.,* 291 F.2d 563 (2d Cir. 1961) (new trial granted in antitrust case when Government negligently failed to turn over certain papers relating to a prosecution witness after trial court ordered production); *Riland v. Commissioner,* 79 T.C. 185, 194–195 (1982) (Government's loss of its own file, if one was lost, containing Government records on taxpayer does not constitute violation of due process which would invoke the remedies of summary judgment or suppression when it was not established by the evidence that the lost records were material in a constitutional sense).

Also, summary judgment is inappropriate where there is a genuine issue of material fact. Here, the loss of petitioner's records does not resolve the substantive question of whether petitioner was organized and operated for exempt purposes.

Finally, we do not think that the unintentional loss of records, even though the loss may have been contributed to by the manner in which they were packaged or by the decision to mail the records to Atlanta, is sufficient grounds for holding

respondent in default or for dismissing the case under Rule 123. While the record is not entirely clear, we are convinced that the actual mailing by Ms. Robinson to Mr. Nickerson was occasioned by an attempt on Mr. Nickerson's part to accommodate the petitioner or its counsel by not requiring their production of the records in Atlanta. Petitioner's motions are denied.[6]

*Appropriate orders will be issued.*

---

[6]For the same reasons discussed *infra*, we also deny petitioner's motion to return property or compel stipulation of determination of no deficiency, motion to quash statutory notice of deficiency, and motion to strike respondent's answer.