David F. COOK, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 98–525T.

United States Court of Federal Claims.

Feb. 25, 2000.

William A. Roberts, Dallas, Texas, counsel for plaintiff.

Charles J. Crueger and Charles M. Ruchelman, U.S. Department of Justice, with whom was Acting Assistant Attorney General Paula Junghans, counsel for defendant.

### ORDER

ALLEGRA, Judge.

Inextricably woven into the administration of the Federal tax laws is a fundamental promise that those laws will be enforced fairly and uniformly. Toward this end, the tax system includes a series of procedural protections for taxpayers associated with the assessment of taxes, penalties and interest. These procedures, however, constitute a double-edged sword for if the Internal Revenue Service (the "Service") follows them and an assessment results, a set of judicially-created presumptions, grounded in the common law, arise to support the validity of the assessment. These presumptions apply prominently in tax refund suits, where they affect the fact-finding process by imposing evidentiary burdens on the taxpayer challenging the assessment. *See, e.g., Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933). At issue in this refund suit is whether these presumptions—and the evidentiary burdens they impose—remain viable where the Service admits that it has lost the administrative file documenting the basis upon which a "responsible officer" tax penalty was assessed against the plaintiff.

## I. Background

On June 8, 1992, defendant, acting through the Service, assessed against plaintiff, David F. Cook, a penalty pursuant to 26 U.S.C. § 6672(a),[1] for failure to pay over withheld employment taxes. The total amount of this penalty was $97,976.00. This amount allegedly corresponded to payroll taxes that were withheld from the wages of employees of National Metal Finishing, Inc. ("NMFI"), a now-defunct Texas corporation for which Mr. Cook served as president and which underwent Chapter 11 bankruptcy proceedings in 1990. These taxes were allegedly never paid over to the Service.

On September 5, 1997, plaintiff paid $100.00 of the penalty and filed a claim for refund. Plaintiff filed suit on June 18, 1998, claiming that the Service had neither accepted nor rejected his claim within the statutorily-defined time period, thereby giving rise to jurisdiction under 26 U.S.C. § 6532(a)(1). In the complaint, plaintiff asserted that he was neither a "responsible person" nor "willful" in failing to pay over the employment taxes withheld by NMFI, primarily because any payments made from the trust fund were made at the direction of the bankruptcy court overseeing NMFI's dissolution. Plaintiff demanded a refund of the $100.00 paid over to the Service, along with interest and attorney's fees. Defendant answered and counterclaimed on November 18, 1998, demanding payment of the entire section 6672 penalty, plus unpaid interest and collection fees and costs.

On August 16, 1999, during formal discovery, plaintiff filed a Motion to Compel Production of Documents, seeking, *inter alia,* documents from the plaintiff's IRS administrative file.[2] Defendant filed its opposition to this motion on September 2, 1999, indicating that the plaintiff's IRS administrative file

---

1. Section 6672(a) (26 U.S.C.) provides, in pertinent part:

 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

2. The IRS administrative file is a compilation of information used in variety of internal agency procedures, including the establishment of as-

sessments, as well the processing of refund claims and refund suits. More than a thousand provisions of the Service's Manual discuss the contents, uses and handling of this file. The provision that describes the use of the file in processing refund suits contains a checklist of the documents normally included in the administrative file, such as: tax returns, claims for refund, the revenue agents' reports on any original examination of the tax year in question, as well as on the refund claim itself, any IRS Appeals Division Reports regarding the tax year, and a detailed transcript of the taxpayer's account. IRM (35)(17)42.

appears to be lost.[3] Discussions at an October 1, 1999, hearing held on the motion to compel centered on whether the loss of this file, and the corresponding loss of material establishing the historical factual basis for the IRS' assessment of the penalty against plaintiff, alter several basic rules that ordinarily govern the conduct of tax refund suits. By order of September 22, 1999, this court instructed the parties to file supplemental memoranda on what impact, if any, the loss of the administrative file should have upon the presumption of correctness and the burdens of proof, persuasion, and going forward with evidence.[4] Defendant filed its memorandum of law on November 12, 1999; plaintiff filed its memorandum of law on November 15, 1999.

## II. Discussion

■ Ordinarily, the Government may establish a *prima facie* case as to a taxpayer's liability for a penalty under section 6672(a) by presenting the assessment of liability against him as a responsible person for the willful failure to collect, account for, or pay over taxes withheld from employees. *Michaud v. United States*, 40 Fed.Cl. 1, 15 (1997); *Teets v. United States*, 29 Fed.Cl. 697, 702 (1993), *aff'd*, 39 F.3d 1196 (1994). *See also Ruth v. United States*, 823 F.2d 1091, 1092 (7th Cir.1987); *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir.1983), *cert. denied*, 465 U.S. 1079, 104 S.Ct. 1440, 79 L.Ed.2d 761 (1984). A certified copy of the taxpayer's "Certificate of Assessments and Payments" is "routinely used to prove that a tax assessment has in fact been made." *Rocovich v. United States*, 933 F.2d 991, 994 (Fed.Cir.1991). *See also Teets*, 29 Fed.Cl. at 702; *Dougherty v. United States*, 18 Cl.Ct. 335, 350 (1989), *aff'd without op.*, 914 F.2d 271 (Fed.Cir.1990); *Pototzky v. United States*, 8 Cl.Ct. 308, 315 (1985). In the instant case, this court must determine, under the circumstances of this case, whether the assessment is entitled to a presumption of correctness and whether the plaintiff retains the burden of proof both as to the matters raised in his complaint and in the government's counterclaim.[5] The court will analyze these questions in turn.

## A. The Presumption of Correctness

■ In tax refund suits, factual issues are tried *de novo* in this court, with no weight given to subsidiary factual findings made by the Service in its internal administrative proceedings. *International Paper Co. v. United States*, 36 Fed.Cl. 313, 322 (1996); *Sara Lee Corp. v. United States*, 29 Fed.Cl. 330, 334 (1993). However, in a refund suit, the assessment made by the Service is presumed to be correct and this places an obligation on the taxpayer to come forward with evidence to rebut the presumption. *United States v. Janis*, 428 U.S. 433, 440–41, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct.

---

**3.** In his response to the Motion to Compel, defendant's counsel stated:

> Counsel for defendant is not currently in possession of the IRS Administrative File and after an exhaustive search and communications with the various IRS and Department of Justice employees who may have had possession of the Administrative File, counsel for defendant believes the IRS Administrative File relating to plaintiff to be lost.

**4.** Following the hearing, plaintiff filed two additional motions: a motion to dismiss the defendant's counterclaim and a motion for Rule 11 sanctions.

**5.** The court recognizes that in a fully developed case, where both sides are able to make complete evidentiary presentations, the viability of the presumption of correctness and the placement of the burden of persuasion are likely to be insignificant. In such cases, resolving the issues presented by the pending motions would be outcome determinative only if the evidence were in equipoise—a highly unlikely event. *See* IRS Restructuring and Oversight Hearings Before the Senate Finance Comm., 105th Cong., 2nd Sess., 282, 285 (1998)(statement of Fred T. Goldberg, Jr.) ("As a practical matter, the chance that changing the burden of proof in litigated cases will make a difference is about like the odds of flipping a coin and having it land on its edge."). However, the *viability of the presumption and placement of the burden of proof can be determinative in undeveloped cases, where for example, no evidence is adduced by one or both parties on a critical element. See* Steve R. Johnson, *The Dangers of Symbolic Legislation: Perception and Realities of the New Burden–of–Proof Rules*, 84 Iowa L.Rev. 413, 444–45 (1999) (hereinafter "Johnson"). As this court is in no position to evaluate whether the instant case will be fully developed or not, it is important to resolve the issues presented by the plaintiff's motions.

287, 79 L.Ed. 623 (1935).[6] Viewed in these terms, the presumption of correctness "is a procedural device which requires the taxpayer to come forward with enough evidence to support a finding contrary to the Commissioner's determination." *Rockwell v. Commissioner,* 512 F.2d 882, 885 (9th Cir.1975), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975).[7] The jurisprudence justifies the presumption based on "the strong need of the government to accomplish swift collection of revenues and in order to encourage recordkeeping by taxpayers." *Carson v. United States,* 560 F.2d 693, 696 (5th Cir. 1977). *See also Bull v. United States,* 295 U.S. 247, 259–60, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); *Portillo,* 932 F.2d at 1133; *Higginbotham v. United States,* 556 F.2d 1173, 1175 (4th Cir.1977); *Psaty v. United States,* 442 F.2d 1154, 1160 (3d Cir.1971).

 The presumption of correctness generally prohibits a court from looking behind the Commissioner's determination, even though it may be based on hearsay or other evidence inadmissible at trial.[8] *See Zuhone v. Commissioner,* 883 F.2d 1317, 1326 (7th Cir.1989); *Clapp v. Commissioner,* 875 F.2d 1396, 1402–03 (9th Cir.1989); *Ruth v. United States,* 823 F.2d 1091, 1094 (7th Cir.1987). In highly limited circumstances, however, this "no look" doctrine does not apply and the government may be required to provide some factual foundation for its assessments. *See, e.g., Portillo,* 932 F.2d at 1133. In Judge Goldberg's colorful words, "[t]he tax collector's presumption of correctness has a herculean muscularity of Goliathlike reach, but we strike an Achilles' heel when we find no muscles, no tendons, no ligaments of fact." *Carson,* 560 F.2d at 696. In more subfusc terms, the Supreme Court likewise has ob-

served that the presumption of correctness does not apply when the government's assessment falls within a narrow, but important, category of a " 'naked' assessment without any foundation whatsoever..." *Janis,* 428 U.S. at 441, 96 S.Ct. 3021.[9] For this purpose, an assessment is "naked" and "beyond saving" when "the records supporting an assessment are excluded from evidence, ... or are nonexistent, ..., so that the basis upon which an assessment is calculated is beyond the knowledge of the court." *United States v. Schroeder,* 900 F.2d 1144, 1149 (7th Cir.1990) (citations omitted). *See also United States v. Hatfield,* 1996 WL 153686 (N.D.Ill.1996).

 In the instant case, the loss of the administrative file gives rise to the possibility that the penalty assessment in question lacks foundation. As described in *Janis* and its progeny, however, an assessment is not "naked" simply because the administrative file supporting its entry is lost—what is critical, given the *de novo* nature of the proceedings before this court, is that admissible evidence exists to support the assessment. *See Estate of Magnin v. Commissioner,* 184 F.3d 1074, 1081 (9th Cir.1999); *Karme v. Commissioner,* 673 F.2d 1062, 1065 (9th Cir.1982). If such evidence exists, and is admitted by the court, it is irrelevant whether it is the same evidence that the Service relied upon in originally making its assessment. *See Coleman v. United States,* 704 F.2d 326, 329 (6th Cir.1983) (holding that assessment was naked, but noting that "secondhand" records or "any demonstrably reasonable methodology of estimation" may be used to establish presumption of correctness). Indeed, consistent with the "no-look" doctrine, courts have

---

**6.** *See also Seminole Thriftway Inc. v. United States,* 42 Fed.Cl. 584, 587 (1998); *Whiteside v. United States,* 26 Cl.Ct. 564, 566 (1992).

**7.** *See also Portillo v. Commissioner,* 932 F.2d 1128, 1133 (5th Cir.1991); *Danville Plywood Corp. v. United States,* 16 Cl.Ct. 584, 593–94 (1989), *aff'd,* 899 F.2d 3 (Fed.Cir.1990); Christina Potter Moraski, *Proving a Negative— When the Taxpayer Denies Receipt,* 70 Cornell L.Rev. 141, 142 (1984) *(hereinafter "Moraski").*

**8.** The Tax Court has indicated that the "underlying rationale" for this rule "is the fact that a trial

before [this court] is a proceeding de novo; our determination as to a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level." *Greenberg's Express, Inc. v. Commissioner,* 62 T.C. 324, 328, 1974 WL 2624 (1974).

**9.** The other recognized exception to the "no-look" policy is where there is an allegation of unconstitutional conduct by Service employees. *See Suarez v. Commissioner,* 58 T.C. 792, 812–14, 1972 WL 2560 (1972). No such allegation has been made here.

repeatedly held that the government may support a tax assessment based on any admissible evidence, including that first disclosed in discovery, and, conversely, need not rely solely, or at all, on the evidence reviewed administratively by the Service. *See Tucker v. United States*, 8 Cl.Ct. 180, 187–88 (1985), *modified on other grounds*, 8 Cl.Ct. 575 (1985).[10]

In the instant case, then, the court must ultimately determine whether records supporting the assessment exist and are admissible. Notwithstanding the loss of the administrative file, the defendant asserts that such records do exist and has provided excerpts from them with its memorandum of law. While, at this stage of the proceedings, the court is unwilling to accept these records as the requisite support for the assessment,[11] these records undoubtedly could demonstrate that the assessment in question is not "naked," but rather has a foundation in fact, and that the presumption of correctness is fully applicable. If, however, the offered evidence proves lacking or inadmissible, then the assessment in question would be "naked" and the presumption would not arise. While it remains to determine whether this would cause the burden of proof to shift to the government—a topic discussed below—at a minimum, it appears that the loss of the presumption would leave the government in great peril if its proof were limited to negating the plaintiff's case without affirmatively supporting the assessment.

In sum, the government's admission that it has lost the entire administrative file here obliges this court to look behind the assessment. Using the procedure described in more detail below, the court will, at trial, review the government's evidence supporting the assessment, before determining whether the assessment is truly "naked" or, conversely, is entitled to the normal presumption of correctness.[12]

## B. The Burden of Proof on the Taxpayer's Complaint

■ Although sometimes referred to as "the opposite sides of a single coin," *Portillo*, 932 F.2d at 1133, the presumption of correctness must be distinguished from the taxpayer's burden of proof in the refund suit. As a general principle, the taxpayer has the burden of proof in most tax controversies, but the demands of this burden differ depending on the forum in which the suit is filed.[13] In

---

**10.** *See also Llorente v. Commissioner*, 74 T.C. 260, 264–65, 1980 WL 4552 (1980), *rev'd in part, aff'd. in part, on other grounds*, 649 F.2d 152 (2d Cir.1981) (presumption not lost if IRS determination "is supported by evidence which can be properly introduced, even though respondent had evidence which cannot be utilized in the formulation of the deficiency"); *Jackson v. Commissioner*, 73 T.C. 394, 400, 1979 WL 3735 (1979); 14 John Mertens, *The Law of Federal Income Taxation* § 50.447 (1998) ("The inability to produce a record unintentionally lost, whether by the taxpayer, the Commissioner, or a third party, alters the type of evidence that may be offered to establish a fact…. Under such circumstances, secondary evidence is admissible to prove the contents of an unavailable original writing"); Paula M. Junghans & Joyce K. Becker, *Federal Tax Litigation* ¶ 18.03[1] (1992) (*hereinafter* "Junghans & Becker").

**11.** At this juncture in the proceedings, the court is ill-postured to render factual findings with respect to whether these materials provide an adequate foundation for the assessment in question. This is particularly true as the documents in question are not all self-authenticating.

**12.** The plaintiff also seeks to invalidate the assessment, asserting that in losing his administra-

tive file, the Service violated various internal procedures requiring record retention and consequently cannot demonstrate that its internal procedures were followed in establishing the assessment in question. This assertion is misplaced, as it is well-recognized that such internal procedures "are directory not mandatory" and do not provide a basis for overturning an assessment. *Estate of Jones v. Commissioner*, 795 F.2d 566, 571 (6th Cir.1986). *See also Virginia Educ. Fund v. Commissioner*, 799 F.2d 903, 904 (4th Cir. 1986); *Foxman v. Renison*, 625 F.2d 429, 432 (2d Cir.1980), *cert. denied*, 449 U.S. 993, 101 S.Ct. 530, 66 L.Ed.2d 290 (1980), *reh. den.*, 449 U.S. 1119, 101 S.Ct. 932, 66 L.Ed.2d 848 (1981). Similarly misplaced is plaintiff's offhand assertion that the loss of the file somehow violates its due process rights—to the extent that the presumption of correctness is or is not modified in accordance with the long-standing legal principles described above, plaintiff clearly will receive all the process it is due. *See Curley v. United States*, 791 F.Supp. 52, 55 (E.D.N.Y.1992).

**13.** It has been common to discuss two aspects of the burden of proof: the duty of bringing forward evidence (the burden of production) and the risk of nonpersuasion (the burden of persuasion). *See Anastasato v. Commissioner*, 794 F.2d

the Tax Court, a taxpayer need only prove that the Commissioner's deficiency determination is incorrect. *See Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933). By comparison, in a refund suit, a taxpayer has the burden of proving by a preponderance of the evidence that the assessment or determination is incorrect and the correct amount, if any, of tax. *See Helvering v. Taylor,* 293 U.S. at 515, 55 S.Ct. 287 ("[u]nquestionably the burden of proof is on the taxpayer"); *Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932), *modified,* 284 U.S. 599, 52 S.Ct. 264, 76 L.Ed. 514 (1932); *Carson,* 560 F.2d at 696.[14]

Modern courts examining the rationale for imposing the burden of proof on the taxpayer often focus on several factors, typically "the presumption of administrative regularity; the likelihood that the taxpayer will have access to the relevant information; and the desirability of bolstering the record-keeping requirements of the Code." *United States v. Rexach,* 482 F.2d 10, 16 (1st Cir.1973), *cert. denied,* 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973). *See also* Johnson, *supra* at 449–50. Other relatively recent decisions note that the taxpayer should bear the burden of proof simply because it is the plaintiff—as noted by the Ninth Circuit, "[i]n most litigation, from time immemorial, the burden of proof .... is on the plaintiff." *Rockwell,* 512 F.2d at 887. Several early decisions, some predating the oft-cited "*Helvering*" decisions on this subject, explain the

rationale for this rule by focusing on the common-law heritage of the refund suit as involving a right of action for *indebitatus assumpsit*—essentially a lawsuit for money had and received. *See United States v. Jefferson Elec. Mfg. Co.,* 291 U.S. 386, 402–03, 54 S.Ct. 443, 78 L.Ed. 859 (1934); *Stone v. White,* 301 U.S. 532, 535, 57 S.Ct. 851, 81 L.Ed. 1265 (1937). *See also David v. Phinney,* 350 F.2d 371, 376–77 (5th Cir.1965). Under the common law, the burden of proof in actions in *assumpsit* for money was placed on the person making a claim of funds held by another. The Supreme Court adopted this allocation of the burden of proof when, in 1881, it first held that the Court of Claims had jurisdiction over claims for tax refunds. *See United States v. Real Estate Sav. Bank,* 104 U.S. 728, 732–34, 17 Ct.Cl. 434, 26 L.Ed. 908 (1881).[15] *See also Arthur v. Unkart,* 96 U.S. 118, 122, 24 L.Ed. 768 (1877)("The burden of proof is upon the party holding the affirmative of the issue."); Johnson, *supra* at 417; Martinez, *supra* at 258, 268.

The cases describing the genesis of the burden of proof rule are conspicuous in their failure to link theoretically the allocation of the burden directly to the presumption of correctness. Nonetheless, a significant body of case law describes the extent to which the loss of the presumption of correctness impacts the placement of the burden of proof. There is, for example, a long-standing split in the circuits as to whether rebutting

884, 887 (3d Cir.1986). *See also* Johnson, *supra* at 415–16. In theory, the burden of production is "a procedural device which allows a judge to determine whether a dispute is within the limits of a jury's competence." Leo P. Martinez, *Tax Collection and Populist Rhetoric: Shifting the Burden of Proof in Tax Cases,* 39 Hastings L.J. 239, 248 (1987) (*hereinafter* "Martinez"). While some have observed that disassociating the two burdens is artificial, *see, e.g.,* John McNaughton, *Burden of Production of Evidence: A Function of a Burden of Persuasion,* 68 Harv. L.Rev. 1382, 1382 (1955), it remains that in this court, which conducts trials without juries and does not employ a directed verdict procedure, the burden of production is largely meaningless. Accordingly, as referred to herein, the phrase "burden of proof" is intended to refer to the ultimate burden of persuasion.

**14.** Since the Service's administrative examination in this case commenced before July 22,

1998, the burden of proof provisions of the Internal Revenue Service Restructuring Act of 1998, 26 U.S.C. § 7491, are inapplicable. *See* Pub.L. No. 105–206, § 3001(c)(1), 112 Stat. 685, 726–27 (1998).

**15.** The burden of proof rule actually may have its genesis as early as 1836, when the Supreme Court "recognized the existence of a right of action against a Collector of Customs for a refund of duties illegally assessed and paid under protest." *Flora v. United States,* 362 U.S. 145, 185–86, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) (Whittaker, J. dissenting)(citing *Elliott v. Swartwout,* 35 U.S. (10 Pet.) 137, 9 L.Ed. 373 (1836)). The Supreme Court indicated that this action was based on the common law action of money had and received. *Flora,* 362 U.S. at 186, 80 S.Ct. 630 (citing *Elliott,* 35 U.S. at 156–58)

the presumption of correctness causes the burden of proof to shift automatically to the government.[16] For our purposes, however, it is controlling that the Federal Circuit, following the majority rule, has held that after a taxpayer overcomes the presumption, it must still carry the ultimate burden of proof or persuasion. See *Danville Plywood Corp. v. United States*, 899 F.2d 3 (Fed.Cir.1990), *aff'g*, 16 Cl.Ct. 584, 593–94 (1989). Consistent with the rule in this circuit, if the defendant here establishes that a presumption of correctness attaches to the assessment in question, then, even if the plaintiff overcomes that presumption, the burden of proof will remain on the plaintiff. But, what if the defendant cannot provide a foundation for its assessment, that is, if the assessment remains "naked"? That scenario, which theoretically could arise in the instant case, prompts a question of apparent first impression in this court—to wit, does the burden of proof in a refund suit shift to the defendant if, rather than being overcome by evidence introduced by the taxpayer, the presumption of correctness instead simply never arises, because an assessment is "naked" and utterly without foundation?

There are several reasons why it appears that even where a presumption of correctness does not arise, the burden of proof should remain on the taxpayer. First, pure logic suggests that if the burden does not shift when a taxpayer demonstrates that an assessment supported by records is "arbitrary and erroneous," it also should not shift when an assessment is deemed "arbitrary and erroneous" because it is "naked." The court cannot conceive why the reason the presumption is discounted as "arbitrary and erroneous" should matter when it comes to the allocation of the burden of proof. Second, the various rationales discussed above for imposing the burden of proof on the

taxpayer only serve to reinforce this conclusion. Thus, under the common law rationale, the loss of the presumption of correctness does not alter the fundamental nature of a refund suit as an *assumpsit* action for money had and received, in which the burden is borne by the party seeking to recover funds. And, under the modern rationale for allocating the burden, even without the presumption, the taxpayer remains the party seeking to press a claim and best positioned to preserve and bring forward evidence bearing on the facts of that claim. Accordingly, imposing the burden of proof on the taxpayer, even where no presumption of correctness arises, is essentially consistent with the rationale for imposing this burden on the taxpayer in the ordinary case.

Plaintiff, however, suggests that Supreme Court's decision in *Janis* dictates a different conclusion, namely, that where the presumption of correctness does not arise, the burden of proof on the taxpayer's claim is shifted to the government. In *Janis*, a wagering tax case, the Supreme Court was required to decide whether evidence obtained by State law enforcement officers in violation of the taxpayer's rights under the Fourth Amendment could be introduced by the Government in a civil tax case. Without such evidence, the assessment would be "naked and without any foundation." Quoting *Helvering v. Taylor*, 293 U.S. at 514, 55 S.Ct. 287 the Court stated that the "determination of tax due then may be one 'without rational foundation and excessive,' and not properly subject to the usual rule with respect to the burden of proof in tax cases." *Janis*, 428 U.S. at 441, 96 S.Ct. 3021. The Court noted the existence of an intercircuit conflict "as to the effect upon the burden of proof in a tax case when there is positive evidence that an assessment is incorrect," but observed that this "debate does not extend to the situation

---

16. Cases holding that the burden does not shift include: *Delaney v. Commissioner*, 99 F.3d 20, 23 (1st Cir.1996); *Sullivan v. United States*, 618 F.2d 1001, 1008 (3d Cir.1980); *Rockwell*, 512 F.2d at 884; *Rexach*, 482 F.2d at 15–17; *United Aniline Co. v. Commissioner*, 316 F.2d 701, 704 n. 4 (1st Cir.1963) ("Presumption or no, the burden of proof never shifts"). Cases holding that the burden shifts include: *Hardy v. Commissioner*, 181 F.3d 1002, 1004–05 (9th Cir.1999);

*Keogh v. Commissioner*, 713 F.2d 496, 501 (9th Cir.1983); *Foster v. Commissioner*, 391 F.2d 727, 735 (4th Cir.1968). In *Janis*, the Supreme Court noted, but did not resolve, this conflict. *Janis*, 428 U.S. at 441–42, 96 S.Ct. 3021. It should be noted that many of the cases that hold that burden shifts are unreported income cases involving illegal income, the principles of which may not be applicable to other types of cases.

where the assessment is shown to be naked and without any foundation. The courts then appear to apply the rule of the *Taylor* case." *Id.* at 442, 96 S.Ct. 3021.

The language in *Janis,* which some courts have observed is dicta,[17] is ambiguous and could be viewed as the Supreme Court simply observing what lower courts had concluded without specifically affirming that conclusion. At best, this language is indeterminate on the critical issue before this court, as the Court did not state which aspect of the burden of proof in tax cases, and, particularly, whether the ultimate burden of persuasion, was affected by having a "naked" assessment. Indeed, earlier in its opinion, the Court stated that "for purposes of this case, we assume ... that the burden of proof may be said technically to rest with respondent Janis." *Id.* at 441, 96 S.Ct. 3021. Moreover, the language the Court cited in *Taylor* did not involve a shifting of the burden of persuasion, but rather dealt with whether a taxpayer in a Tax Court suit was obliged to show not only that the Commissioner's determination was erroneous, but also the correct amount of tax owed. Resolving this question, *Taylor* held that, unlike in a refund suit, the taxpayer in a Tax Court deficiency action need not prove the correct amount of tax owed, stating "[w]e find nothing ... that gives any support to the idea that the commissioner's determination, shown to be without rational foundation and excessive, will be enforced unless the taxpayer proves he owes nothing or ... shows the correct amount." 293 U.S. at 514, 55 S.Ct. 287. Thus, the quoted language in *Taylor* did not involve

any aspect of the burden of proof in a refund action. *See* Moraski, *supra* at 147.[18] As such, this court is unwilling to read *Janis* as dictating that in a "naked" assessment case, the burden of proof on the taxpayer's claim is shifted to the government.

It is conceivable that, in some case, the Service's conduct could be so reprehensible that the integrity of the judicial process would demand that this court take appropriate remedial action. Such action might very well include shifting the burden of proof on the plaintiff's refund claim. But, there has been no showing that such is the case here. Accordingly, this court concludes that even if the assessment in question is shown to be naked, the burden of proof in the instant case as to the claims stated in the complaint will remain on the plaintiff.[19]

## C. The Burden of Proof on the Defendant's Counterclaim

In its counterclaim, the government demands payment of the entire section 6672 penalty, plus unpaid interest and collection fees and costs. The pending motions raise two additional issues with respect to this counterclaim.

Plaintiff first argues that this counterclaim should be dismissed, due to what plaintiff portrays as an absolute absence of a factual predicate for the claim. He analogizes a counterclaim in a refund action to a setoff defense and points to *Mahoney v. United States,* 223 Ct.Cl. 713, 718, 1980 WL 4712 (1980), and *Missouri Pacific Railroad Co. v. United States,* 168 Ct.Cl. 86, 338 F.2d 668

---

**17.** *See, e.g., United States v. Walton,* 909 F.2d 915, 919 n. 2 (6th Cir.1990), where the court stated: "The holding in *Janis* is dicta. The Court was opining as to the effect of refusing to admit evidence that the IRS planned to use to support its figures in a tax evasion case because of an allegedly unlawful seizure. The seizure ultimately was declared lawful."

**18.** Two commentators have emphasized this, noting that "[t]he Court [in *Taylor*] said nothing about who should have the burden of proof, in the sense of ultimate persuasion or the risk of nonpersuasion ...." John T. Piper & James M. Jerge, *Shifting the Burden of Proof in Tax Court,* 31 Tax Law. 303, 313 (1978). These commentators also observed that even those cases that talk of *Taylor* supporting a shift of the burden of

proof, *e.g., Gasper v. Commissioner,* 225 F.2d 284, 288 (6th Cir.1955), refer only to the burden of production, and not the ultimate burden of persuasion, stating "[d]espite some statements about the presumption of correctness "disappearing" and that the "burden of proof will shift," it seems likely that the courts mean only a shifting of the burden of going forward." *Id.*

**19.** Plaintiff complains that the loss of the administrative file may prevent it from corroborating certain key aspects of its proof. The court will consider such issues as they may arise at trial, with an eye toward whether the loss of the records truly created prejudice. *See, e.g., American Police & Fire Foundation, Inc. v. Commissioner,* 81 T.C. 699, 1983 WL 14886 (1983).

(1964), for the proposition that the government must possess a minimum factual basis before raising counterclaims in a section 6672 case. In *Missouri Pacific*, the court required the government to support its setoff defense by coming forward with "some concrete and positive evidence, as opposed to a mere theoretical argument, that there is some substance to its claim and is not a mere fishing expedition or a method of discouraging taxpayers from seeking refunds on meritorious claims because of the cost that would result in proving each and every item involved in a tax return." *Missouri Pacific*, 338 F.2d at 672. *See also Mahoney*, 223 Ct.Cl. at 718. It is far from clear that this same analysis applies to a counterclaim such as the one at issue, which, unlike a setoff, is supported by an assessment and arises from matters raised in the taxpayers claim for refund. In such circumstances, the preliminary evidentiary ruling required by *Missouri Pacific* and *Mahoney* is subsumed into the analysis of whether the assessment is valid. *See* Junghans & Becker, *supra* at ¶ 18.03[2]. Moreover, these cases deal with situations in which there was no indication that prior to the filing of the refund suit, the government anticipated the setoff. The courts thus were concerned that the government might use the setoff to punish a taxpayer seeking a refund, filing such setoff on a whim in hopes of developing evidence in support thereof in a discovery-based "fishing expedition." In the case *sub judice*, while questions remain as to the viability of the assessment, there is no question that a factual footing for the counterclaim preexisted the filing of this refund suit. Accordingly, *Missouri Pacific* and *Mahoney* provide no basis for dismissing the counterclaim here.

▮ A more serious question involves the burden of proof on the counterclaim. The general rule places the burden of proof on the government to prove its counterclaim. *International Harvester Co. v. United States*,

169 Ct.Cl. 821, 342 F.2d 432, 446–47 (1965). However, a long line of cases in this court (and its predecessor) has found that the presumption of correctness that ordinarily attaches to the Commissioner's assessment allows the defendant to establish a *prima facie* case by offering into evidence a certified copy of the assessment. *See Adams v. United States*, 175 Ct.Cl. 288, 358 F.2d 986, 994 (1966); *Michaud*, 40 Fed.Cl. at 15; *Whiteside*, 26 Cl.Ct. at 567; *Pototzky*, 8 Cl.Ct. at 315. Once this *prima facie* case is made out, this court and others have held that the burden of proof shifts to the plaintiff. *See, e.g., Pototzky*, 8 Cl.Ct. at 315. *See also Bolding v. United States*, 215 Ct.Cl. 148, 565 F.2d 663, 672 (1977); *Psaty v. United States*, 442 F.2d at 1159–60; *Lesser v. United States*, 368 F.2d 306 (2d Cir.1966) (en banc).[20] Thus, in tax refund suits, the general rule is that the plaintiff in a responsible officer case has the burden of proof both as to its complaint and the government's counterclaim.

In the instant case, however, it remains to be determined whether the Commissioner's penalty assessment is "naked" or instead entitled to the ordinary presumption of correctness. Consistent with the rationale of the decisions discussed above, the burden of proof on the counterclaim in this case thus will shift to the plaintiff only if the defendant establishes that the assessment has an appropriate foundation. If, instead, the assessment is found to be naked, the burden of proof will remain where it ordinarily would be on a counterclaim, that is, on the defendant.

### III. Conclusion

Based on the foregoing, the court concludes that the conduct of any trial proceedings in this case must be modified. Thus, in order to determine whether the presumption of correctness attaches to the assessment in question and to fix the burden of proof on the counterclaim, the defendant, rather than the

---

20. In *Psaty*, the Third Circuit explained its rationale for this rule, in part, as follows:

Under appellant's theory, a taxpayer who makes a partial payment and sues for a refund could thereby shift the full burden of proof as to the balance of the claim to the Government. The difficulty with appellant's contention is that it would impose a substantially greater burden upon a taxpayer who pays his taxes in full and sues for the refund than upon one who makes a partial payment. This is neither logical nor equitable.

442 F.2d at 1160.

plaintiff, shall present its evidence first (with appropriate cross-examination). The court will then rule as to whether the government's evidence provides the necessary foundation for the assessment. Following that ruling, the plaintiff, who retains the burden of proof on his complaint in this case, shall present his case in chief, with normal trial procedures regarding the order of proof to be followed thereafter.

A final word on this matter is warranted. While understanding the Service's immense recordkeeping obligations, this court believes that the Service has a particular responsibility to ensure that files needed for litigation are preserved and timely made available to the Justice Department and, upon proper discovery request, to plaintiffs. While in this seemingly isolated case, the law limits the ramifications of the Service's failure to preserve its administrative records, broader relief might be appropriate were it determined that the problem in preserving records were pervasive and systematic.

Based on the foregoing, IT IS ORDERED:

1. Plaintiff's Motion to Compel Production of Documents, as supplemented, is **GRANTED, IN PART** and **DENIED, IN PART.** If it has not already done so, defendant shall produce all documents in its possession, which are not privileged, and regardless whether copies of such documents were originally contained in the administrative file for this case, responsive to the following requests made by Plaintiff in its First Set of Requests for Production of Documents from Defendant, the United States: paragraphs 1.02 (for relevant tax periods to be stipulated by the parties), 1.05, 1.06, 1.07 and 1.08. In addition, pursuant to 26 U.S.C. § 6103(e)(9), defendant (or, at the defendant's option, the Service) shall disclose in writing to the plaintiff: (i) the name of any other person whom the Service has determined to be liable for a penalty under section 6672(a) for the same failure for which a penalty was assessed against the plaintiff; and (ii) with respect to these named individuals, whether the Service has attempted to collect such penalty from such other person, the general nature of such collection activities and the amount collected. The information described in this paragraph shall be provided by defendant to plaintiff no later than April 14, 2000. In all other regards, Plaintiff's Motion to Compel, as supplemented, is **DENIED.**

2. Plaintiff's Motion to Dismiss Defendant's Counterclaim is **DENIED.**

3. Plaintiff's Motion for Rule 11 Sanctions is **DENIED.**

4. Any trial in this case shall proceed consistent with the procedures described above.