T.C. Memo. 2000-315

UNITED STATES TAX COURT

KEVIN R. JOHNSTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3699-99.                       Filed October 6, 2000.

Kevin R. Johnston, pro se.

<u>Sherri S. Wilder</u>, <u>Nicholas J. Richards</u>, and <u>Miles D. Friedman</u>, for respondent.

MEMORANDUM OPINION

BEGHE, <u>Judge</u>:  Respondent determined a deficiency of $34,541 in petitioner's Federal income and self-employment tax for 1993. Respondent also determined additions to tax under section

6651(a)(1)[1] for failure to file a return and under section 6654 for failure to pay estimated tax, of $8,635 and $1,447, respectively.

We must decide whether petitioner's gross income includes certain payments made during 1993 for services performed by petitioner. Petitioner claims these payments are not his income, because he did not personally receive them. Instead, petitioner directed the recipients of his services to pay an entity known as "Universal Trust" (Universal). Petitioner asserts that Universal should be recognized as a separate taxable entity and that the payments made by the service recipients should be treated as Universal's income. In the alternative, petitioner asserts he is entitled to business deductions that offset the services income.

Petitioner has also filed a "Motion for Summary Disposition and/or Judgment" and a Motion in Limine, which challenge the validity of the statutory notice, question respondent's ability to make certain arguments or introduce certain evidence, and urge a reallocation of the burden of proof.

In addition to rebutting petitioner's procedural challenges, respondent advances three arguments for including in petitioner's income the payments made to Universal. First, respondent claims

---

[1] All section references are to the Internal Revenue Code in effect for 1993, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise specified.

petitioner's attempt to divert to Universal the income from his personal services was an invalid assignment of income under the long line of authority beginning with Lucas v. Earl, 281 U.S. 111 (1930). Second, respondent asserts that Universal should not be recognized as a separate taxable entity because it is a "sham" with no economic substance. Third, respondent asserts that even if Universal is recognized for tax purposes, it is a grantor trust whose income is taxable to petitioner under sections 671-679.

Respondent has also moved for a penalty under section 6673, on the ground that petitioner's primary position--that the payments made to Universal are not petitioner's income--is frivolous. Moreover, respondent has filed a motion (and expressed reservations in stipulations) asking us to dismiss the case at hand, treat certain facts as established, or exclude certain evidence, as a sanction for petitioner's failure to respond to discovery requests and to exchange documents as required by our standing pretrial order.

We reject petitioner's procedural challenges to respondent's actions, deny petitioner's motions, and hold that petitioner's attempted diversion to Universal of the income from his personal services was an invalid assignment of income. We also hold that petitioner has failed to show he is entitled to additional

deductions from that income, except to the very limited extent described below.

Notwithstanding these conclusions, we deny respondent's motion for a penalty under section 6673. We also deny respondent's motion (and other requests) for the exclusion of evidence (or other relief) as a sanction for petitioner's conduct.

Procedural Setting

The statutory notice sent to petitioner determined that petitioner had failed to report $104,786 in business gross receipts. Respondent also sent notices to Julia Ghavami (Ms. Ghavami) and to Universal for 1993, reflecting determinations that Ms. Ghavami and Universal had each received an identical amount (i.e., $104,786) of business gross receipts. As explained in more detail below, these notices were "whipsaw" notices, designed to protect respondent's position if it should be decided that Universal had economic substance and should be respected as a separate taxable entity.

Ms. Ghavami filed a petition with this Court contesting respondent's determination for 1993. See Julia Ghavami v. Commissioner, docket No. 3692-99 (Ghavami). Jimmy C. Chisum (Mr. Chisum)[2], as "Managing Agent for Trustee", purported to file a

_____

[2] We note that Mr. Chisum, and a myriad of purported "trusts" with which he has claimed to be connected, are well
(continued...)

petition on behalf of Universal, contesting the notice sent to Universal for 1993.  See Universal Trust 06-15-90, Four WS TT01, Trustee v. Commissioner, docket No. 3885-98 (Universal).

Due to the common issues involved, we granted respondent's motion to consolidate Ghavami and Universal with the case at hand.  Shortly before trial, however, respondent moved to dismiss Universal for lack of jurisdiction, on the ground that Mr. Chisum had failed to establish his capacity to file a petition on behalf of Universal.  Respondent also moved to sever Universal from the consolidated case, and we granted that motion.  Shortly thereafter, Mr. Chisum submitted a motion to dismiss Universal on various jurisdictional and procedural grounds.  Because respondent and Ms. Ghavami have agreed to a decision that there is no deficiency in Ms. Ghavami's tax for 1993, we have also granted respondent's motion to sever Ghavami from the case at hand.

---

[2](...continued)
known to this Court.  See, e.g., Lipari v. Commissioner, T.C. Memo. 2000-280 (sec. 6673 penalty imposed on taxpayers who claimed they were unable to obtain records from Mr. Chisum, the "trustee" of their "trust"); Banana Moon Trust v. Commissioner, T.C. Memo. 2000-73 (dismissed for lack of jurisdiction because Mr. Chisum, who claimed to be "trustee", did not have capacity to file petition); Jeff Burger Prods., LLC v. Commissioner, T.C. Memo. 2000-72; Bantam Domestic Trust v. Commissioner, T.C. Memo. 2000-63; Photo Art Mktg. Trust v. Commissioner, T.C. Memo. 2000-57; George v. Commissioner, T.C. Memo. 1999-381 ("trust" of which Mr. Chisum was "trustee" was a sham, and payments received by that "trust" were income of osteopathic physician who performed services that generated the income).

A hearing on the cross-motions to dismiss <u>Universal</u> was held on June 19, 20, and 27, 2000. Mr. Chisum claimed to represent Universal at this hearing; he also testified briefly on its behalf. At the end of this hearing, the Court took the motions under advisement, pending resolution of the case at hand.

Although petitioner was pro se, the Court allowed Mr. Chisum, who does not claim to be a member of the bar of any court, to sit beside petitioner at trial. It appears that Mr. Chisum has been advising petitioner on the conduct of his case.

Petitioner testified neither at the <u>Universal</u> hearing nor in the case at hand.

<u>Background</u>

The record consists primarily of two sets of stipulations with exhibits, and a very limited amount of testimony. The stipulations are incorporated herein by this reference.

Petitioner resided in Lake Forest, California, when the petition was filed. Petitioner neither filed an income tax return for 1993 nor paid any estimated tax for that year.

Respondent sent the statutory notice to petitioner on November 18, 1998. The notice stated that $104,786 of unreported business (Schedule C, Profit or Loss From Business) gross receipts were includable in petitioner's income. It contained no further explanation of this item. The computation of tax included in the notice did not allow petitioner any deductions

other than the standard deduction for single filing status, and a deduction for one-half the self-employment tax determined by the notice.

Also on November 18, 1998, respondent sent a statutory notice for 1993 to Ms. Ghavami, which stated that an identical amount of unreported business gross receipts (i.e., $104,786) was includable in her income. At some time or times, Ms. Ghavami and petitioner lived at the same address.

Approximately 1 year before respondent sent the notices to petitioner and Ms. Ghavami, the Commissioner sent a statutory notice to Universal for 1993. The notice to Universal stated that Universal had $21,711 of unreported gross receipts. Because Universal had reported $83,075 of gross receipts on its 1993 fiduciary income tax return (Form 1041), the notice reflected a determination that Universal's 1993 gross receipts were $104,786, the same amount of income set forth in the notices sent to petitioner and Ms. Ghavami.[3]

The notice to Universal stated that the amount of unreported gross receipts was determined using the bank deposits method.

_____

[3] The notice to Universal also disallowed, for lack of substantiation, Universal's claimed deductions for $51,865 of expenses and $31,210 of distributions. Petitioner asserts that if payments made to Universal are includable in his income, he is entitled to deduct many of the expenses paid by Universal on his behalf. Respondent contends that almost all amounts paid by Universal were petitioner's nondeductible personal expenses, not trade or business expenses.

During 1993, a checking account at the Bank of California (the Universal account) was held in Universal's name.  Petitioner and Ms. Ghavami were signatories on this account and wrote checks on the account during 1993.

As the parties have stipulated, $104,786 was deposited in the Universal account during 1993; of this amount, $103,420 was paid by third parties for work done by petitioner, and $1,341 was paid for work done by Ms. Ghavami.  Thus, all but $25 of the $104,786 deposited into the Universal account during 1993 was paid as consideration for services performed by petitioner or Ms. Ghavami.

After review of some canceled checks drawn on the Universal account, respondent has conceded that petitioner is entitled to deduct, as trade or business expenses, $914 paid by Universal for postage, $220 paid by Universal to sponsor sports teams, and $441 paid by Universal for printing.

Petitioner does not have, and did not maintain during 1993, a record of his business and personal automobile mileage.

The amount of the distribution deduction claimed by Universal on its 1993 return, $31,210, was equal to the entire net income shown on the return.  The return states that the $31,210 was distributed to an entity known as "Oak Hargor [sic] Finance", with the following address: "P.O. Box 577, Guelth [sic], Ontario [sic] Canada N1H 6K9".

Facts Concerning Petitioner's Connection With Universal

On June 15, 1990, Donna L. Chisum as "Settlor", Four WS TT01 as "First Trustee", and Mr. Chisum and another individual as "Witness[es]", executed a document (the indenture)[4] purporting to create an entity known as "Universal Trust". The indenture stated that Universal was a "COMMON LAW BUSINESS TRUST ORGANIZATION, also known as a CONTRACTUAL COMPANY * * * with certain assets to be administered by the Trustee for capital Unit Holders represented by Certificates in accordance with the inalienable Common Law rights afforded to man." Notwithstanding this language purporting to create a trust, the indenture also stated that "It is expressly declared that an Unincorporated Business Organization by Contract is hereby created and not a trust agreement by gift, or a partnership, or a company, or a corporation, or a joint venture, or any entity of statutory nature". (Emphasis added.)

Other documents dated June 15, 1990, show that all 100 "capital units" that could be issued by Universal were issued on that date to petitioner and Ms. Ghavami. These documents state that the capital units were issued in exchange for petitioner's and Ms. Ghavami's contribution to Universal of the following:

---

[4] We use the term "indenture" for convenience and not to suggest that Universal should be recognized as a trust for State law or Federal income tax purposes.

> Desk, chair, file cabinet, typewriter, wastebaskets (2) telephones, VCR & TV, bedroom furnishings, living room furniture dining room set, coffee tables, end tables, pictures, etc. note owed to Lynne B. Johnston for $3500.00 <u>knowledge, talent, ability and labor of [petitioner]</u> * * * office supplies and office tools[.]  [Emphasis added.]

The indenture provided that whenever the "board of trustees" determined that Universal had income that would be taxable to Universal if not distributed, the income was to be distributed to capital unit holders in proportion to their holdings; any remaining income was to be allocated to principal.  The indenture also provided that on termination of Universal any remaining assets would be distributed to capital unit holders, also in proportion to their holdings.

Other documents dated June 15, 1990 named petitioner "Secretary" and Ms. Ghavami "General Manager" of Universal, and gave them authority to conduct Universal's day-to-day business. As noted above, both petitioner and Ms. Ghavami could and did sign checks on Universal's bank account.

A document entitled "Registry of Unit Certificates" purports to show that in December 1990, the 100 capital units in Universal were transferred to an entity known as "Isiah 18", and that in October 1991, they were transferred to an entity known as "Oak Harbor".  Mr. Chisum testified that Oak Harbor was a trust established in the Turks and Caicos with a foreign trustee; he

also testified that neither petitioner nor Ms. Ghavami was a beneficiary of Isiah 18 or Oak Harbor.

Mr. Chisum claims that he was either Universal's "trustee", or an officer or agent of Universal's "trustee", from Universal's formation in 1990 until the time of trial, except for the period from October 1991 until May 1993.

Additional Facts Relating to Petitioner's Services

Petitioner is a licensed real estate salesperson in the State of California. At some time not specified in the record, Walter Blazyk (Mr. Blazyk), the president of World Wide Mortgage Corporation (WWMC), approached petitioner and asked him to work for WWMC. Petitioner agreed to do the work provided that WWMC pay Universal for the work done.

During 1993, petitioner worked for WWMC and a few other parties. Also during that year, WWMC paid Universal $95,596 for work done by petitioner; the other parties paid Universal $7,824 for work done by petitioner. As set forth above, this $103,420 paid for petitioner's services was deposited into Universal's bank account.

Petitioner alone did the work for which WWMC paid Universal the $95,596 during 1993. As far as WWMC was aware, Universal was not involved in making any of the business decisions necessary to produce this income. Moreover, Universal was never involved in the working relationship between petitioner and WWMC. Mr.

Blazyk's only contact with Universal occurred when petitioner asked WWMC to issue the checks for his services to Universal. Until June 2000, Mr. Blazyk did not know and never had any contact with Mr. Chisum.

The parties have stipulated that Universal is not legally entitled to hold a real estate license or conduct a mortgage business.

According to California Department of Real Estate records, WWMC was petitioner's employing broker in 1993 and was still petitioner's employing broker in 1997.

Facts Relating to Petitioner's Motions and Respondent's Motion for a Penalty Under Section 6673

On October 7, 1999, the Court filed respondent's Motion to Consolidate for Trial, Briefing, and Opinion. A copy of this motion was mailed to petitioner on October 1, 1999. The motion stated:

> the position of counsel for respondent * * * is that the Universal Trust is a sham and that individual items of income are taxed to the individuals Kevin R. Johnston and Julia Ghavami personally, and individual expense items, if substantiated, are deductible by them personally.

On November 8, 1999, the Court filed a copy of respondent's Requests for Admission, which had been served on petitioner on November 5, 1999. These requests sought information relating to

respondent's position that Universal was a sham.[5]  For example, one request stated that "There has been no change in the use of assets assigned or transferred to the Universal Trust as a result of such transfer or assignment."

On April 26, 2000, the Court filed respondent's Motion to Compel Responses to Respondent's Interrogatories.  That motion stated:

> the primary issue is whether Universal Trust, created by petitioners Ghavami and Johnston; should be disregarded for tax purposes due to its lack of economic substance and attempted assignment of income with the result that the net income reported by the trust, is properly reported by petitioners Ghavami and Johnston.

On June 19, 2000, during the hearing on the cross-motions in Universal, the Court brought to petitioner's attention and discussed for his benefit the assignment of income, sham trust, and grantor trust theories.  On June 20, 2000, the Court told petitioner that trial of the case at hand would begin on June 27, 2000.  The Court arranged this 1-week delay in order to give petitioner yet more time to gather evidence and to encourage the parties to stipulate as many facts as possible.

---

[5] Among the factors we consider, in deciding whether a purported trust is a sham for tax purposes, is whether the grantor's relationship to the property transferred to the trust was materially different after the trust's formation.  See Markosian v. Commissioner, 73 T.C. 1235, 1243 (1980).

Respondent warned petitioner more than 2 months before trial that taxpayers in sham trust cases have been penalized under section 6673 for advancing frivolous arguments. On June 19, 2000, respondent's counsel informed petitioner that he was prepared to move for a penalty under section 6673 if petitioner continued to insist that the $103,420 paid to Universal for work done by petitioner was not petitioner's income.

On June 13, 2000, petitioner had stipulated that during 1993, WWMC paid Universal $95,596 for work done by petitioner.

Trial began on June 27, 2000, after the 1-week interval arranged by the Court; the parties submitted a Second Stipulation of Facts. In that document, petitioner agreed to a number of additional stipulations concerning the payment of $103,420 to Universal for work done by petitioner, and concerning deposits made to Universal's bank account during 1993. However, petitioner refused to testify.

The Parties' Contentions

Respondent now asserts that petitioner's gross income includes $103,420 paid to Universal during 1993 for work done by petitioner.[6] According to respondent, this amount is includable

_____

[6] The statutory notice asserted that petitioner's income included $104,786 in unreported business gross receipts. Respondent now claims that petitioner's gross income should be increased by only $103,420, the amount the record establishes was paid to Universal (and deposited in its bank account) for

(continued...)

in petitioner's income: (1) Under the assignment of income doctrine; (2) because Universal was a sham; or (3) if Universal was not a sham, because Universal's income is taxable to petitioner under the grantor trust rules. Respondent has conceded that petitioner is entitled to a small amount of trade or business deductions relating to this income.

Petitioner maintains that the $103,420 is Universal's income, or in the alternative, contends that he is entitled to business deductions that offset the income.

Petitioner has filed a "Motion for Summary Disposition and/or Judgment" contesting the validity and effect of the statutory notice. Petitioner has also filed a Motion in Limine contesting respondent's ability to make certain arguments or introduce certain evidence. Because our disposition of these motions could affect our consideration of the substantive issues, we turn our attention to them now.

I. Petitioner's Motion for Summary Judgment

According to petitioner's summary judgment motion, respondent has failed to establish a sufficient link between

---

[6](...continued)
services performed by petitioner.

The record also establishes that $1,341 of the $104,786 deposited in Universal's account was paid for services performed by Ms. Ghavami. The record contains no information about the proper treatment of the remaining $25 deposited in the Universal account ($104,786 minus $103,420 and $1,341 equals $25).

petitioner and the funds paid to Universal, which respondent claims are petitioner's income. Petitioner asserts that as a result, the statutory notice was an invalid "naked assessment", and we must dismiss the case at hand for lack of jurisdiction. In the alternative, petitioner claims respondent's failure to supply the necessary "predicate evidence" deprives the notice of its usual presumption of correctness, and respondent must bear the burden of proof on all issues.

A. Validity of Notice

Petitioner's claim that the notice was invalid effectively asks us to "look behind" the notice. See Shriver v. Commissioner, 85 T.C. 1, 3 (1985). As a general rule, we do not look behind a deficiency notice to examine the evidence used, the propriety of respondent's motives, or the administrative policy or procedure that informs respondent's determinations. This is because a trial before the Tax Court is a proceeding de novo; our determination of a taxpayer's tax liability must be based on the merits of the case and not on any previous record developed at the administrative level. See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974). Moreover, even where a taxpayer has made a showing casting doubt on the validity of respondent's determination, the notice is generally not rendered void, and it remains sufficient to vest this Court with

jurisdiction. See Suarez v. Commissioner, 58 T.C. 792, 814 (1972).

The Court of Appeals for the Ninth Circuit, to which an appeal of the case at hand would lie, has developed an exception to this rule. In Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), revg. 81 T.C. 855 (1983), the Court of Appeals held a notice invalid and dismissed the action for lack of jurisdiction in favor of the taxpayer.

The notice in Scar informed the taxpayers that they had $138,000 of unreported income from a tax shelter partnership known as the "Nevada Mining Project". The notice also stated that tax was being assessed on this income at the maximum marginal rate because the taxpayers' original return was unavailable. At trial, however, the taxpayers established that they had no connection with the Nevada Mining Project, and that they had in fact filed their tax return. As a result, the Court of Appeals concluded that "the taxpayers proved that a determination of their deficiency had not been made". See Scar v. Commissioner, supra at 1367 n.6.

Petitioner has made no such showing in the case at hand. The notice sent to petitioner stated that he had $104,786 in unreported business receipts during 1993. Petitioner has stipulated that an identical amount was deposited in the Universal bank account during 1993. Petitioner has also

stipulated that $103,420 of that $104,786 was paid for personal services petitioner performed.  Moreover, the record reveals that petitioner was a signatory on the Universal account, that he was one of the original "capital unit" holders in Universal, and that as a unit holder he was entitled to receive distributions of income and of corpus from Universal.  Therefore, a comparison of the facts in the record with the notice sent to petitioner confirms that respondent actually determined a deficiency in petitioner's tax.  Moreover, as we conclude in our discussion of the substantive issues below, the record also proves the accuracy of the determination made.

Equally importantly, the Court of Appeals for the Ninth Circuit has limited the application of Scar to the narrow circumstances where the notice of deficiency reveals on its face that no determination was made.  See Kantor v. Commissioner, 998 F.2d 1514, 1521-1522 (9th Cir. 1993); Clapp v. Commissioner, 875 F.2d 1396, 1402 (9th Cir. 1989); Campbell v. Commissioner, 90 T.C. 110 (1988).

Petitioner argues that respondent's three statutory notices to petitioner, Ms. Ghavami, and Universal, which attributed the same amount of income to each of them, show that respondent failed to determine a deficiency in petitioner's tax and that petitioner's notice was invalid on its face.  We disagree.

In Clapp v. Commissioner, supra, the individual taxpayers transferred their businesses to foreign trusts.  The Commissioner issued notices to both the individuals and the trusts; the notices attributed many of the same items of income to both parties.  The notices also disallowed numerous deductions as unsubstantiated, including all business expenses claimed by the individuals and the trusts.

The taxpayers in Clapp challenged the validity of the notices, stressing the Commissioner's alternative positions and the blanket disallowance of deductions.  In response, the Court of Appeals for the Ninth Circuit observed that the Commissioner's alternative notices were intended to ensure that the Commissioner would be able to proceed whether or not the trusts were found to be shams.  The Court of Appeals stated that taking such alternative positions:

> seems to be a reasonable response to a tax evasion scheme for which there is not as yet a settled legal interpretation.  Any other approach would reward the tax evader who could come up with a novel scheme and force the Commissioner to take a single, consistent legal interpretation.  * * * On previous occasions we have upheld notices of deficiency which took alternative positions for precisely this reason.  Malat v. Commissioner, 302 F.2d 700, 704 (9th Cir. 1962); Revell, Inc. v. Riddell, 273 F.2d 649, 660 (9th Cir. 1960).  [Clapp v. Commissioner, supra at 1401; fn. ref. omitted.]

The statutory notices sent to petitioner, Ms. Ghavami, and Universal, like the notices in Clapp v. Commissioner, supra, were

"whipsaw" notices designed to protect respondent's ability to proceed, if a purported "trust" should be recognized as a separate taxable entity.  In the circumstances of the case at hand, the notice sent to petitioner was proper.

For this and the other reasons set forth above, we hold that the notice sent to petitioner was valid and that we have jurisdiction of the case at hand.  Petitioner's argument to the contrary has no merit.

B.  Presumption of Correctness

In general, a deficiency notice is presumed correct, and the taxpayer has the burden of proving it wrong.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).[7]  There are certain exceptions to this rule, however, where the notice alleges that the taxpayer has received unreported income.

The Court of Appeals for the Ninth Circuit has held in unreported income cases that the presumption of correctness applies only where the Commissioner's determination is supported by some substantive evidence that the taxpayer received the unreported income.  See Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985); Weimerskirch v. Commissioner, 596 F.2d 358, 360-361 (9th Cir. 1979), revg. 67 T.C. 672 (1977); Petzoldt v. Commissioner, 92 T.C. 661, 687-690 (1989) (discussing Court of

---

[7] We do not find that the burden-shifting provisions of current sec. 6201(d) or sec. 7491 apply.

Appeals for the Ninth Circuit authorities).  Once the Commissioner has introduced the necessary "predicate evidence" concerning the unreported income, however, the taxpayer has the usual burden of establishing, by a preponderance of the evidence, that the Commissioner's determination is arbitrary or erroneous. See Rapp v. Commissioner, supra at 935; Petzoldt v. Commissioner, supra at 689.  The Court of Appeals has described the required evidentiary foundation as "minimal".  Palmer v. IRS, 116 F.3d 1309, 1312-1313 (9th Cir. 1997).  Moreover, this exception to the presumption of correctness applies only to unreported income; the taxpayer always has the burden of proving entitlement to any deductions.  See United States v. Zolla, 724 F.2d 808, 809-810 (9th Cir. 1984).

Petitioner asserts that the notice in the case at hand should not be presumed correct, because there is insufficient evidence linking petitioner to the funds paid to Universal, which respondent claims are petitioner's income.  Petitioner notes that Universal, not petitioner, actually received payment of the funds.  Moreover, although petitioner was one of the original capital unit holders in Universal, petitioner asserts that there is no evidence that petitioner was a unit holder (or other beneficiary) of Universal during the year in issue.  As a result, according to petitioner, the presumption of correctness does not apply because respondent has failed to show that petitioner

personally received the unreported income described in the notice.

Although some of the authorities cited by petitioner, such as Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), and Rapp v. Commissioner, supra at 935, do mention the taxpayer's "receipt" of income, it is nevertheless clear that the Commissioner may satisfy the predicate evidence requirement in unreported income cases by introducing evidence linking the taxpayer to tax-generating acts. See Shriver v. Commissioner, 85 T.C. 1, 4 (1985). Alternatively, respondent may satisfy the predicate evidence requirement by showing the taxpayer was connected to unexplained bank deposits or cash. See Schad v. Commissioner, 87 T.C. 609, 618-620 (1986) (discussing Court of Appeals for the Ninth Circuit authorities); Tokarski v. Commissioner, 87 T.C. 74 (1986).[8]

The record contains ample evidence linking petitioner both to tax-generating acts and to bank deposits of the income

---

[8] The authorities cited by petitioner, when read in full, support this conclusion. For example, although Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985) does mention evidence of receipt, it also states that "Once the Government has carried its initial burden of introducing some evidence linking the taxpayer with income-producing activity" (emphasis added), the burden of proof shifts to the taxpayer. Moreover, Hardy v. Commissioner, 181 F.3d 1002, 1005 (9th Cir. 1999), states that the exception to the presumption of correctness applies only where the Commissioner has failed to provide any evidentiary foundation for the deficiency notice.

generated by those acts.  For example, it is undisputed that petitioner, a licensed real estate salesperson, worked for WWMC and a few other parties during 1993.  It is also undisputed that WWMC and the other parties paid a total of $103,420 for petitioner's services during that year.  Moreover, it is clear that this $103,420 was deposited into Universal's bank account, that petitioner was one of the signatories to that account, and that petitioner wrote checks on that account.  Finally, it is clear that petitioner was one of the original capital unit holders of Universal, and as such was once entitled to receive distributions of income and corpus from Universal.  All this more than amply links petitioner with the unreported income described in the notice.

Petitioner asserts that, as a matter of law, none of this evidence may be used to support the statutory notice, because: (1) Respondent has not shown that respondent had the evidence when the notice was issued, and (2) the evidence was not described in the notice itself.  We disagree.

In general, any admissible evidence may be used to support a deficiency notice.  See Cook v. United States, 46 Fed. Cl. 110 (2000), which stated that an assessment was not "naked" even if the administrative file supporting its entry was lost, because:

> what is critical, given the de novo nature of the
> proceedings * * * is that admissible evidence exists to
> support the assessment.  If such evidence exists, and

        is admitted by the court, it is irrelevant whether it
        is the same evidence that the Service relied upon in
        originally making its assessment. * * * [Id. at 114;
        citations omitted.]

See also Dellacroce v. Commissioner, 83 T.C. 269, 284 (1984) (stating that in case appealable to Court of Appeals for the Second Circuit, deficiency notice based on hearsay must be held arbitrary unless we can find admissible evidence in the record to support it); Rosano v. Commissioner, 46 T.C. 681, 687 (1966) ("we know of no rule of law calling for a review of the materials that were before the Commissioner in order to ascertain whether he relied upon improper evidence so that the burden of proof might be shifted to him"); cf. Suarez v. Commissioner, 58 T.C. 792 (1972) (notice not entitled to presumption of correctness where it was stipulated that notice was based entirely on constitutionally inadmissible evidence).[9]

Petitioner's proposed rule, if accepted, would require courts to discover and examine the information actually used by the Commissioner in determining a deficiency, whenever a taxpayer challenged the validity of a notice. Such routine inquiries would violate the well-settled rule that we do not, except in exceptional circumstances, "look behind" a deficiency notice. In

---

[9] We also note that in one of the cases cited by petitioner, Hardy v. Commissioner, supra at 1005, the Court of Appeals in part relied on the taxpayer's stipulations in deciding that the predicate evidence requirement was satisfied.

effect, the exception set forth in <u>Scar v. Commissioner</u>, 814 F.2d 1363 (9th Cir. 1987), revg. 81 T.C. 855 (1983), would no longer be limited to cases where the notice of deficiency is invalid on its face.

In the case at hand, petitioner has not offered any evidence that could lead us to conclude, or made any assertions that could even lead us to suspect, that the statutory notice was either arbitrary or based upon constitutionally tainted evidence. Moreover, the record contains a great deal of evidence showing that petitioner in fact received almost all the income charged in the statutory notice. As a result, petitioner is not being put in the position of having to "prove a negative" (i.e., the non-receipt of income), simply because respondent issued a notice entitled to a presumption of correctness. Cf. <u>Weimerskirch v. Commissioner</u>, 596 F.2d at 361.

For this and the other reasons described above, we hold that the notice sent to petitioner is amply supported by the evidence in the record; the unreported income exception to the presumption of correctness does not apply to the case at hand. Petitioner's arguments to the contrary have no merit.

II. <u>Petitioner's Motion in Limine</u>

The statutory notice stated that petitioner's income included unreported business gross receipts, but it did not give any further explanation for this determination.

Petitioner's Motion in Limine asserts that respondent's failure to include a fuller explanation in the statutory notice should have consequences. More particularly, petitioner claims respondent should not be permitted to raise the assignment of income, sham, or grantor trust theories in the case at hand. In the alternative, petitioner asserts that respondent should bear the burden of proof on factual issues relating to those theories.

A. Issue Preclusion

We note that respondent is not necessarily limited to the issues or theories discussed in the statutory notice or the answer. For example, we have considered arguments raised by the Commissioner for the first time on brief. See Ware v. Commissioner, 92 T.C 1267, 1268 (1989), where we stated:

> The rule that a party may not raise a new issue on brief is not absolute. Rather, it is founded upon the exercise of judicial discretion in determining whether considerations of surprise and prejudice require that a party be protected from having to face a belated confrontation which precludes or limits that party's opportunity to present pertinent evidence. * * *

More generally, we have stated, in Pagel, Inc. v. Commissioner, 91 T.C. 200, 211-212 (1988), affd. 905 F.2d 1190 (8th Cir. 1990):

> It is well established that a party may rely upon a theory if the opposing party has been provided with fair warning of the intention to base an argument upon that theory. "Fair warning" means that respondent's failure to give notice, in the notice of deficiency or in the pleadings, of his intention to rely on a particular theory did not prejudice the taxpayer's

ability to prepare its case.  Of key importance in evaluating the existence of prejudice is the amount of surprise and the need for additional evidence on behalf of the party opposed to the new position.  [Citations omitted.]

See also Sundstrand Corp. v. Commissioner, 96 T.C. 226, 346-347 (1991), where we observed that we have refused to consider a new theory raised by the Commissioner where consideration of the theory would prejudice the taxpayer.  In Sundstrand Corp. we concluded that the taxpayer was prejudiced because it would have presented additional evidence at trial if it had known of the new theory in advance.

In the case at hand, respondent's Motion to Consolidate informed petitioner, more than 8 months before trial, of respondent's position that Universal was a sham and that individual items of income were taxed to petitioner personally. More than 7 months before trial, respondent's Requests for Admission sought information that once again put petitioner on notice of respondent's position that Universal was a sham.  In addition, almost 2 months prior to trial, respondent's motion to compel informed petitioners:

the primary issue is whether Universal Trust, created by petitioners Ghavami and Johnston; should be disregarded for tax purposes due to its lack of economic substance and attempted assignment of income with the result that the net income reported by the trust, is properly reported by petitioners Ghavami and Johnston.

Finally, on June 19, 2000, the Court discussed the assignment of income, sham, and grantor trust theories with petitioner.  The

Court did not start trial until 1 week later, to allow petitioner yet more time to gather additional evidence and to attempt to settle as many factual issues as possible. When trial resumed after this 1-week period, petitioner refused to testify. Moreover, petitioner has not claimed that he could have found or offered any additional evidence relevant to any of respondent's three theories, if given more time.

For all these reasons, it is clear petitioner had fair warning of the assignment of income, sham, and grantor trust theories, and would not be prejudiced by our consideration of them. Accordingly, we hold that respondent may raise (and we may consider) any of those theories in this proceeding.[10] Petitioner's argument to the contrary has no merit.

### B. Burden of Proof

Rule 142(a) provides that "The burden of proof shall be upon the petitioner * * * except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the

---

[10] Petitioner also asserts that respondent should be precluded from introducing any evidence relating to the sham, grantor trust, and assignment of income theories. Because we have just decided that petitioner had "fair warning" of these theories, we can think of no reason why respondent should be prohibited from introducing evidence relevant to those theories. See Rule 41(b)(2), which states:

> If evidence is objected to at the trial on the ground that it is not within the issues raised by pleadings, then the Court may receive the evidence * * * and shall do so freely when justice so requires and the objecting party fails to satisfy the Court that the admission of such evidence would prejudice such party in maintaining such party's position on the merits.

answer, it shall be upon the respondent."  Because the statutory notice did not mention the assignment of income, sham, or grantor trust theories, petitioner asserts that those theories are "new matter" on which respondent has the burden of proof.

For many years, a deficiency notice was not required to contain an explanation.  A notice that simply informed the taxpayer that there was a deficiency and the amount thereof was sufficient to raise the presumption of correctness and place the burden of proof on the taxpayer.  See Abatti v. Commissioner, 644 F.2d 1385, 1389 (9th Cir. 1981), revg. T.C. Memo. 1978-392; Olsen v. Helvering, 88 F.2d 650, 651 (2d Cir. 1937).  Consistent with this approach, some courts held that where a deficiency notice was broadly worded, a theory raised by the Commissioner after the notice was issued was not "new matter", unless the new theory was inconsistent with some position necessarily implicit in the determination itself.  Abatti v. Commissioner, supra at 1390; Sorin v. Commissioner, 29 T.C. 959, 969-971 (1958), affd. per curiam 271 F.2d 741 (2d Cir. 1959).

In 1988, section 7522 was enacted by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3735.  Section 7522 provides that any deficiency notice mailed after 1989 "shall describe the basis for * * * the tax due * * * included in such notice."

In <u>Shea v. Commissioner</u>, 112 T.C. 183 (1999), we considered whether a theory raised by the Commissioner for the first time on brief was "new matter" on which the Commissioner had the burden of proof.  After discussing section 7522, we held that where the Commissioner relied on a basis that was not stated in the statutory notice and that required the presentation of different evidence, the new basis was new matter for purposes of Rule 142.

We need not consider this question further in the case at hand.  As we explain in our discussion of the substantive issues immediately below, the record establishes that $103,420 of the $104,786 paid to Universal was petitioner's income under the assignment of income rule.  We would reach the same result no matter who had the burden of proof on respondent's theories.[11]

III.  <u>Does Petitioner's Income Include the $103,420 Paid to Universal</u>?

According to documents executed in June 1990, petitioner transferred his "knowledge, talent, ability and labor" to Universal, in exchange for certain "capital units" in Universal.

Respondent claims that petitioner's attempt to transfer his "knowledge, talent, ability and labor" to Universal was an archetypical example of an invalid "assignment of income", under

---

[11] The record also establishes that $1,341 of the $104,786 paid to Universal was paid for work done by Ms. Ghavami. Respondent has conceded that this $1,341, and the remaining $25 deposited in the Universal account, were not income to petitioner.

the long line of authority beginning with Lucas v. Earl, 281 U.S. 111 (1930). Accordingly, respondent asserts petitioner's gross income includes the $103,420 paid for petitioner's services during 1993, even though petitioner did not directly receive the payments of that income but instead caused the payments to be diverted to Universal.

Petitioner claims that Universal (and not petitioner) should be taxed on the $103,420 in question, because Universal was the "true earner" of that income. According to petitioner, Universal provided the services for which it was paid; petitioner was simply Universal's agent or employee. Petitioner additionally asserts that in these circumstances, taxing petitioner on the income in question would conflict with well-settled law recognizing personal service corporations as the "true earners" of the income generated by the efforts of their shareholder/employees.

We agree with respondent. The record establishes that petitioner's transfer to Universal was a classic assignment of income of the kind described in Lucas v. Earl, supra. Because such assignments are ineffective for Federal income tax purposes, petitioner remained the party taxable on the income generated by his services.

One of the primary principles of the Federal income tax is that income must be taxed to the one who earns it. The Supreme

Court has referred to this assignment of income rule as "the first principle of income taxation", Commissioner v. Culbertson, 337 U.S. 733, 739 (1949), and as "a cornerstone of our graduated income tax system", United States v. Basye, 410 U.S. 441, 450 (1973). Attempts to subvert this principle by deflecting income away from its true earner to another entity by means of contractual arrangements, however cleverly drafted, are not recognized as dispositive for Federal income tax purposes, notwithstanding their validity under State law. See Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980) (citing United States v. Basye, supra, and Lucas v. Earl, supra).

The assignment of income rule applies with particular force to personal service income. In the landmark case of Lucas v. Earl, supra, Mr. Earl and his wife entered into a contract providing that any property acquired by either of them, including salary and fees, would be considered joint property. The Supreme Court assumed that the contract was valid under State law, but held that Mr. Earl was still taxable on his entire salary and professional fees, stating:

> this case is not to be decided by attenuated subtleties. It turns on the import and reasonable construction of the taxing act. There is no doubt that the statute could tax salaries to those who earned them and provide that tax could not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. * * * [Lucas v. Earl, supra at 114-115.]

Petitioner does not dispute that the $103,420 paid to Universal for work done by petitioner must be taxed to the earner of that income. Instead, petitioner asserts that for tax purposes Universal should be considered to have earned that income (i.e., was the "true earner" of the income).

We are therefore required to decide whether petitioner or Universal is the proper party to be taxed on the $103,420 generated by petitioner's work, but paid to Universal. In cases similar to the case at hand, we have held that the taxable party is the person or entity who directed and controlled the earning of the income, rather than the person or entity who received the income. See Vercio v. Commissioner, supra at 1253 (citing Wesenberg v. Commissioner, 69 T.C. 1005 (1978); American Sav. Bank v. Commissioner, 56 T.C. 828 (1971)); see also Commissioner v. Sunnen, 333 U.S. 591, 604 (1948) ("The crucial question remains whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes."); Corliss v. Bowers, 281 U.S. 376, 378 (1930) (revocable trust created by husband for benefit of wife and children treated as invalid assignment of income; Supreme Court stated that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed * * *. * * * The income that is subject to a

man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not.").

The record shows that Mr. Blazyk, president of WWMC, approached petitioner and asked him to work for WWMC. Petitioner then agreed to do the work provided that WWMC pay Universal for the work done.

During 1993, WWMC paid Universal $95,596 for work done by petitioner. Also during that year, a few other parties paid Universal $7,824 for work done by petitioner. This $103,420 paid for petitioner's services was deposited into Universal's bank account. Petitioner had signatory authority over that account and wrote checks on the account during 1993. Moreover, on brief petitioner has conceded that he used the Universal account to pay personal expenses during 1993; he also appears to argue that only approximately $31,000 of the $51,865 of expenses claimed by Universal on its return for 1993 were in fact business expenses.

The record also shows that petitioner alone did the work for which WWMC paid Universal during 1993. As far as WWMC was aware, Universal was not involved in making any of the business decisions necessary to produce this income. More importantly, the parties have stipulated that Universal was not legally entitled to hold a real estate licence or conduct a mortgage business, and it was never involved in the working relationship

between petitioner and WWMC.  Mr. Blazyk's only contact with Universal occurred when petitioner asked WWMC to issue the checks for his services to Universal.  Until June 2000, Mr. Blazyk did not know and never had any contact with Mr. Chisum, although Mr. Chisum claims that he was either Universal's trustee, or an officer or agent of Universal's trustee, during most of Universal's existence.  Finally, petitioner did not report (and has not conceded) that he received any salary (or other income) as a result of the payments made to Universal for his services.

All this leads us to conclude that there was no negotiation between petitioner and Universal, and no contract requiring petitioner to supply his services to Universal and giving Universal the right to control petitioner's work.  It also causes us to conclude that Universal did not have a contract with WWMC obligating Universal to provide services.  In this connection, we note that petitioner did not testify (or offer any other evidence) about the nature of his employment relationship, if any, with Universal, about the existence of any contracts he had with Universal, or about Universal's relationships or contracts with the recipients of petitioner's services.  In these circumstances, we draw the normal inference from petitioner's failure to offer evidence on these matters, which is that the evidence, if produced, would not have been helpful to his cause.

See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

For all these reasons, the record establishes that petitioner, rather than Universal, was the "true earner" of the $103,420 paid for petitioner's services during 1993. Petitioner's attempted transfer of his "knowledge, talent, ability and labor" to Universal was a classic assignment of income. See Vercio v. Commissioner, 73 T.C. at 1250-1254 (taxpayers created trusts to which they purportedly conveyed the "exclusive use of * * * [their] lifetime services and all of the currently earned remuneration therefrom"; held, taxpayers retained ultimate direction and control over earning of the income and the conveyance was an invalid assignment of income, in part because it was unlikely that a binding contract for services between the trust and the taxpayers had been entered into, there was no evidence that the trust had any right to direct the taxpayers' income-producing activities, and it was questionable whether the trusts could in any event obligate the taxpayers to perform services that were inherently personal in nature); see also Vnuk v. Commissioner, 621 F.2d 1318, 1319 (8th Cir. 1980), affg. T.C. Memo. 1979-164 (physician conveyed to a trust "the exclusive use of * * * [his] lifetime services and all the currently earned remuneration accruing therefrom"; held, physician retained ultimate direction and control and conveyance

was an anticipatory assignment of income, in part because the trust had no right to supervise the taxpayer's employment or determine his remuneration, and the taxpayer had no legal duty to earn money or perform services for the trust).

Petitioner argues that our conclusion conflicts with the authorities recognizing personal service corporations (PSC's) as the "true earners" of the income generated by the efforts of their shareholder/employees.  We disagree.

First, we note that in many circumstances, arrangements creating PSC's are invalid assignments of income.  See, e.g., Leavell v. Commissioner, 104 T.C. 140 (1995); Johnson v. Commissioner, 78 T.C. 882, 889-890 (1982) (amounts paid by professional basketball club for player's services were income to player rather than to PSC which received the payments), affd. without published opinion 734 F.2d 20 (9th Cir. 1984).  We also note that Congress has enacted various Code provisions in an attempt to end various perceived abuses of PSC's.  See, e.g., sec. 269A.

Second, the authorities recognizing PSC's as the true earners of the income generated by the shareholders' services have noted the tension between the assignment of income rule set forth in Lucas v. Earl, 281 U.S. 111 (1930), and the importance attributed to the corporate form by Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943).  See, e.g., Johnson v.

Commissioner, 78 T.C. at 890 n.13; Keller v. Commissioner, 77
T.C. 1014, 1030-1031 (1981), affd. 723 F.2d 58 (10th Cir. 1983).
Of course, in the case at hand petitioner employed a purported
trust in his diversion scheme, and the Moline Properties, Inc.
policy favoring the recognition of shareholders and corporations
as separate taxable entities is simply not applicable.

Third, even when we respect a PSC as the true earner, this
does not end our examination; we then evaluate the arrangement
between the shareholder and the PSC under section 482.  In so
doing, we consider whether the shareholder's total compensation
from the PSC was essentially equivalent to that which he would
have received if he had not employed the PSC structure.  See,
e.g., Haag v. Commissioner, 88 T.C. 604, 614-615 (1987), affd.
without published opinion 855 F.2d 855 (8th Cir. 1988); Keller v.
Commissioner, 77 T.C. at 1024-1025.  This analysis ensures that
the shareholder will be taxed on the reasonable value of his
services, except to the extent his taxable income is reduced by
Code provisions that specifically provide for deferral or
nonrecognition of income (e.g., qualified pension plan
provisions).  We repeat that in the case at hand petitioner did
not report (and has not conceded) that he received any salary (or
other income) as a result of the payments made to Universal for
his services.  Moreover, Universal's 1993 tax return claimed a
deduction for a distribution of Universal's entire net income to

a beneficiary with a foreign address, which Mr. Chisum asserted was a Turks and Caicos trust with a foreign trustee.

Fourth, we have held that two elements must be present before a PSC, rather than its service-performing employee, can be considered the true earner of the income. First, the service-performing employee must be just that--an employee of the PSC, whom the PSC has the right to direct or control in some meaningful sense. Second, the PSC and the person or entity using the employee's services must have a contract or similar arrangement recognizing the PSC's controlling position. See Johnson v. Commissioner, 78 T.C. at 891. Neither of these elements is present in the case at hand.

In short, the authorities concerning the taxation of PSC's confirm rather than challenge our conclusion that petitioner's attempted diversion to Universal of the compensation for his services was an invalid assignment of income.

We hold that petitioner's gross income includes the $103,420 paid to Universal, as determined by respondent. Because we reach this holding under the assignment of income rule, we need not consider respondent's alternative arguments that Universal was a sham or a grantor trust.[12]

---

[12] Petitioner also argues that our holding conflicts with certain Courts of Appeals decisions concerning the tax treatment of contingent legal fees. See, e.g., Estate of Clarks v. United
(continued...)

IV.   Is Petitioner Entitled to Additional Deductions?

The statutory notice did not allow petitioner any deductions for trade or business expenses.  On the basis of copies of a few checks drawn on the Universal account, respondent has conceded that petitioner is entitled to deduct, as trade or business expenses, the following amounts paid by Universal:  $914 for postage, $220 to sponsor sports teams, and $441 for printing.

---

[12](...continued)
States, 202 F.3d 854 (6th Cir. 2000) (contingent-fee agreement is not invalid assignment of income, and client's income does not include portion of recovery paid to attorney pursuant to the agreement); Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959), affg. in part and revg. in part 28 T.C. 947 (1957).

Petitioner's argument has no merit.  Not only do other Courts of Appeals (including the Court of Appeals for the Ninth Circuit, to which the present case is appealable) and the Tax Court disagree with Estate of Clarks and Cotnam, see, e.g., Coady v. Commissioner, 213 F.3d 1187 (9th Cir. 2000); Baylin v. United States, 43 F.3d 1451 (Fed. Cir. 1995); Kenseth v. Commissioner, 114 T.C. 399 (2000), but, more importantly, the purported trust arrangement in the case at hand is completely different from the contingent fee agreements at issue in Estate of Clarks and Cotnam.

In Estate of Clarks and Cotnam, the Courts of Appeals stressed that the client's claim was, for all practical purposes, worthless without the services of the attorney who could bring it to fruition; in Estate of Clarks, the Court of Appeals even characterized the attorney-client relationship in a contingent-fee arrangement as similar to a joint venture or partnership.  By contrast, in the case at hand, the record shows that petitioner's services had value by themselves; Universal had nothing to do with, and no control over, the earning of petitioner's service income.  In short, petitioner's control of the income generated by his services was more than sufficient to make him the party taxable on that income.

Petitioner asserts he is entitled to additional trade or business deductions on account of other expenses paid by Universal, in an aggregate amount of approximately $29,500. Petitioner refused to testify (or supply any other evidence) about the business purpose of these expenses. The only proof petitioner offered in support of his claim consists of copies of various checks drawn on the Universal account.

Respondent objects to the admission of these checks because petitioner did not exchange them with respondent 15 days prior to trial, as required by our standing pretrial order. Respondent also argues that petitioner has not proved his entitlement to any additional deductions, whether or not the checks are admitted.

Before we can consider these issues, we need to address one preliminary matter. We have redetermined the amount of petitioner's income under the assignment of income rule; we have not found it necessary to decide whether Universal was a sham. We also note that respondent has never argued that the income and deductions in issue should be attributed to different taxpayers. Respondent has stipulated that petitioner is entitled to deductions for some amounts paid by Universal; these stipulations were not conditioned on our deciding that Universal was a sham. Accordingly, we conclude respondent has conceded that, because we have decided petitioner's income includes payments received by Universal, petitioner may deduct amounts paid by Universal to the

extent petitioner establishes the amounts were paid for valid trade or business expenses of petitioner.

A.  Should the Checks Offered by Petitioner Be Admitted?

We conclude that the copies of checks submitted by petitioner should be admitted, notwithstanding respondent's objection.  The parties have stipulated the existence of the Universal account.  Respondent has introduced copies of checks drawn on that account as evidence that petitioner and Ms. Ghavami were authorized to (and did) write checks on that account during 1993; petitioner has stipulated the admission of those copies. In addition, at the Court's urging, petitioner worked with respondent's counsel during the week before trial to agree on many additional stipulations, including stipulations concerning deposits to the Universal account that helped prove respondent's case.  We also note that as part of these additional stipulations, respondent conceded that petitioner is entitled to deduct some expenses paid with checks drawn on the Universal account.

In light of the foregoing, it is clear respondent has not been surprised by the existence of the Universal account, and does not question or need to investigate the authenticity of the copies of checks drawn on that account.  Indeed, respondent has relied on check copies and other information about the Universal account as proof of respondent's case in chief; some of that

information was the subject of stipulations entered into after the 15-day period specified in our pretrial order had expired. Finally, we note that even if we admit the checks offered by petitioner as proof that Universal paid the payees named therein, petitioner is still required to prove that the payments were ordinary and necessary business expenses. See Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943) (taxpayer must prove entitlement to any deduction claimed). For all these reasons we conclude that respondent would not be prejudiced by our admission of the checks submitted by petitioner and that in fairness we should admit them into evidence.

B. Did Petitioner Prove His Entitlement to Deductions?

Petitioner asserts that the checks prove his entitlement to deductions for the following categories of expenses: Water; electricity; gas; home office cleaning and maintenance; medical insurance; life insurance; equipment; subscriptions and publications; cellular phone service; supplies; automobile; trash pickup; and miscellaneous. However, the information contained on many of the checks does not prove that the checks were actually used to pay expenses of the category claimed. More importantly, the checks appear to have been used to pay expenses that could be either business or personal, depending on the circumstances. In the absence of any evidence of the business purpose of these

claimed expenses, petitioner is simply not entitled to deduct them.

However, petitioner has also claimed a deduction for $726 in pager expenses. After having examined the checks, we are convinced that such amount was in fact spent on pager services, and that under the circumstances of this case, this expense was more likely than not a business expense. We therefore conclude petitioner is entitled to deduct it.

We hold that other than this amount (and the deductions conceded by respondent), petitioner is not entitled to any of the additional deductions claimed.

V. <u>Additions to Tax</u>

Section 6651(a)(1) imposes an addition to tax for the failure to file an income tax return within the time prescribed by law, unless it is shown that the failure is due to reasonable cause and not to willful neglect. The taxpayer bears the burden of showing that reasonable cause exists. See Rule 142(a); <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985).

Petitioner did not file a return for 1993, and there is no evidence he had reasonable cause for this failure. Accordingly, petitioner is liable for the maximum 25-percent addition for failure to file, applied to the amount of the deficiency as redetermined in accordance with this opinion.

Section 6654(a) provides for an addition to tax in the case of any underpayment of estimated tax by an individual. This addition is mandatory absent a showing by the taxpayer that one of the statutory exceptions applies. See Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).

Petitioner did not pay any estimated tax for 1993, and he has not shown that any exceptions apply. Accordingly, the section 6654 addition applies, determined in accordance with the rest of this opinion.

## VI. Respondent's Motion for Sanctions Under Rule 104

Approximately 2 weeks before trial, respondent moved for sanctions under Rule 104(c), in response to petitioner's failure to participate in discovery and to comply with the Court's orders concerning discovery. At trial, respondent stated that the stipulations entered into by the parties had rendered this motion moot. In light of the stipulations and our holdings in this case, we agree with respondent. Respondent's motion will be denied as moot.

## VII. Respondent's Motion for a Penalty Under Section 6673

Section 6673(a)(1) provides that whenever it appears that the taxpayer has instituted or maintained proceedings in this Court primarily for delay, or the taxpayer's position in such proceedings is frivolous or groundless, or the taxpayer unreasonably failed to pursue available administrative remedies,

the Court may require the taxpayer to pay a penalty to the United States of up to $25,000.

At trial, after petitioner stated that he would not testify, respondent moved for a penalty under section 6673. According to respondent's motion, petitioner's claim that the $103,420 paid to Universal is not includable in petitioner's income is frivolous.

Under the circumstances of the case at hand, we decline to impose the section 6673 penalty. On June 19, 2000, respondent's counsel informed petitioner that he was prepared to move for a penalty if petitioner continued to insist that the $103,420 paid to Universal for work done by petitioner was not petitioner's income. Respondent's motion seeks a penalty against petitioner on this ground.

We note that on June 13, 2000, petitioner had stipulated that WWMC paid Universal $95,596 for work done by petitioner. We also note that on June 27, 2000, the parties submitted a Second Stipulation of Facts. In that document, petitioner made many additional stipulations concerning the payment of the $103,420 to Universal for work done by petitioner, and concerning deposits of that amount to Universal's bank account. These stipulations helped prove respondent's case in chief. Indeed, we note that respondent did not present any witnesses at trial.

We believe that petitioner's course of conduct was counseled by Mr. Chisum, who appears to have advised petitioner throughout

this proceeding.[13]  In addition, after respondent's last warning on June 19, 2000, the bulk of petitioner's efforts were devoted to jurisdictional and procedural challenges to the statutory notice, rather than to the substantive argument respondent complains of.[14]  For these reasons and in these circumstances, we decline to impose a section 6673 penalty on petitioner.

In conclusion, we note that petitioner's jurisdictional and procedural challenges had no legal merit.  They were objectively frivolous and may well have been maintained primarily for delay.  We also note that petitioner is currently before the Court in a case involving other years.[15]  Should petitioner ignore the warnings and holdings of this Court in the case at hand, there will be ample opportunity to consider whether imposition of a penalty under section 6673 would be appropriate.

---

[13] We observe that if Mr. Chisum were a lawyer authorized to practice in this Court, there might well be grounds under Rule 24(g) for disqualifying him from representing petitioner and the other participants in the trust arrangements that Mr. Chisum has been promoting and operating, see supra note 2, on the ground that Mr. Chisum has a conflict of interest.  Cf. Para Technologies Trust v. Commissioner, T.C. Memo. 1992-575.  The predicament that petitioner finds himself in would appear to be the direct result of the operation of that conflict.  See Dixon v. Commissioner, T.C. Memo. 2000-116, n.18 and accompanying text.

[14] In this connection, we note that petitioner's arguments against the validity of the statutory notice are almost identical to Mr. Chisum's arguments in Universal's case.

[15] Johnston v. Commissioner, docket No. 18619-99.

We have considered all allegations and arguments of petitioner that we have not discussed herein; we find them to be without merit or irrelevant.

To take account of the foregoing,

<u>An order will be issued denying petitioner's Motion for Summary Disposition and/or Judgment and Motion in Limine and respondent's Motion for Sanctions Under Rule 104 and Motion for Sanctions Under Section 6673; decision will be entered under Rule 155</u>.